Scott A. McLAUGHLIN, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 91255.

Supreme Court of Missouri,
En Banc.

July 3, 2012.

Rehearing Denied Aug. 14, 2012.

Melinda K. Pendergraph, Public Defender's Office, Columbia, for McLaughlin.

James B. Farnsworth, Shaun J. Mackelprang, Attorney General's Office, Jefferson City, for the State.

PATRICIA BRECKENRIDGE, Judge.

Scott A. McLaughlin appeals the overruling of his Rule 29.15 motion for post-conviction relief from his convictions for first-degree murder, forcible rape, and armed criminal action. Because Mr. McLaughlin was sentenced to death on the first-degree murder charge, this Court has jurisdiction. Mo. Const. art. V, sec. 10; order of June 16, 1998. On appeal, Mr. McLaughlin claims that the motion court erred in overruling his motion to disqualify the trial judge, who sentenced Mr. McLaughlin to death, from presiding over Mr. McLaughlin's Rule 29.15 post-conviction relief proceeding and erred in denying his eight claims of ineffective assistance of trial counsel. Mr. McLaughlin also claims that Missouri's death penalty is unconstitutional because it is arbitrary and capricious for failing to narrow the class of people eligible for the death penalty. This Court affirms the motion court's denial of post-conviction relief.

## I. Factual and Procedural Background [1]

After meeting in 2002, Mr. McLaughlin and Beverly Guenther began a relationship and eventually lived together for several months. During that time, Mr. McLaughlin frequently would call and visit Ms. Guenther at her place of employment. Their relationship was marked by turbulent, serious break-ups, which at times resulted in Ms. Guenther obtaining restraining orders against Mr. McLaughlin. Their relationship ended in the spring of 2003, although they continued to see each other on social occasions.

On October 27, 2003, Mr. McLaughlin was arrested and charged with burglarizing Ms. Guenther's home. He was arraigned on November 18, 2003. He asserted that he was reclaiming things that he left at her house after they ceased living together. Based on the incident, Ms. Guenther sought and received an order of protection against Mr. McLaughlin.

On November 20, 2003, with the protective order still in effect, Mr. McLaughlin drove to Ms. Guenther's place of employment and waited until she emerged from the office. Mr. McLaughlin forced Ms. Guenther to the ground, raped her, and then stabbed her repeatedly, causing a fan-shaped blood stain on the parking lot.

---

1. Portions of the facts are quoted from the opinion in Mr. McLaughlin's direct appeal, *State v. McLaughlin*, 265 S.W.3d 257 (Mo. banc 2008), without attribution.

Mr. McLaughlin dragged her body to his car, placed it in the hatchback, and drove her body to the river to dispose of it. When Mr. McLaughlin was unable to put the body into the river because of the thick underbrush, he left her body along the bank. He then returned to his parked car and, due to a flat tire acquired while trying to dispose of the body, slept in the car.

The police apprehended Mr. McLaughlin the next day at a hospital in St. Charles, where he was taken by a friend to get medication to treat his increased hyperactivity and nervousness. The police discovered that Mr. McLaughlin had bleached the interior of his car and cut large sections of fabric from the rear seat. Despite these efforts, the police found Ms. Guenther's blood in his car. Mr. McLaughlin was charged with first-degree murder, forcible rape, and two counts of armed criminal action, one arising from the murder charge and the other arising from the rape charge.

Mr. McLaughlin was tried by a jury. During the guilt phase of trial, the jury found Mr. McLaughlin guilty of first-degree murder, forcible rape, and armed criminal action arising from the first-degree murder. Mr. McLaughlin was acquitted of the armed criminal action charge arising from the rape.

During the penalty phase of trial, the jury heard victim-impact evidence from Ms. Guenther's family and extensive evidence about Mr. McLaughlin's troubled and abusive childhood. Mr. McLaughlin's biological father was an alcoholic and was abusive toward his mother, a prostitute. When he was taken into the custody of the juvenile division, he lived in multiple foster homes until the age of five, when he and his younger brother and sister were placed with Louise and Harlan McLaughlin, who eventually adopted them. His adoptive parents also were abusive toward Mr. McLaughlin. His adoptive father, a police officer, would hit him with a paddle referred to as the "board of education" and would use his taser and nightstick on him. The McLaughlins often would limit the children's access to food by locking the refrigerator and cabinet doors. Their house was referred to by Mr. McLaughlin's childhood friends as "the house of horrors."

During the penalty phase, Mr. McLaughlin also presented expert testimony regarding Mr. McLaughlin's psychological and mental problems to the jury. Dr. Anthony Udziela, a psychologist, testified about extensive intelligence testing the doctor performed on Mr. McLaughlin when he was 9 years old due to poor performance and peculiar behavior at school. The testing indicated that Mr. McLaughlin has a full-scale IQ of 82, which is in the low average range. Dr. Udziela diagnosed Mr. McLaughlin at that time with attention deficit disorder with hyperactivity, expressed language disorder, and adjustment disorder with depressed features.

Mr. McLaughlin also was evaluated when he was 9 years old by Dr. Pasquale Accardo, a pediatrician, for neurodevelopmental impairments. Dr. Accardo found that Mr. McLaughlin suffered from brain impairment, although he could not determine the cause. He testified that Mr. McLaughlin suffered from cognitive limitations, language limitations, and attentional limitations. According to Dr. Accardo's testimony, these limitations were neurologically based.

Dr. Mark Cunningham, a clinical and forensic psychologist, testified about his examination of Mr. McLaughlin that he performed prior to the Rule 29.15 hearing. He also testified about his interviews with Mr. McLaughlin's biological and adoptive family, as well as his extensive review of

Mr. McLaughlin's school, prison, and hospital records. Dr. Cunningham testified that the abuse and neglect Mr. McLaughlin was exposed to as a child led to neurodevelopmental problems, such as a low IQ, difficulty with language, issues with visual-spatial cognition, and symptoms of attention deficit disorder with hyperactivity. Dr. Cunningham also identified psychological disorders affecting Mr. McLaughlin as an adult. He diagnosed Mr. McLaughlin with major depression, antisocial personality disorder, and borderline personality disorder. According to Dr. Cunningham's testimony, each of these conditions existed at the time Mr. McLaughlin committed the crimes.

Finally, Mr. McLaughlin presented the testimony of Dr. Sripatt Kulkamthorn, Mr. McLaughlin's treating physician in 2002 and 2003. During that time, Dr. Kulkamthorn found that Mr. McLaughlin struggled from both depression and anxiety. To treat his depression and anxiety, he prescribed Paxil for Mr. McLaughlin. Mr. McLaughlin was unable to afford the prescription, however, so he only received Paxil during office visits with Dr. Kulkamthorn.

After hearing all of the evidence in the penalty phase, the jury deliberated and made its findings. The jury found in step one that the statutory aggravating factor of depravity of mind had been proven beyond a reasonable doubt. In step two, the jurors did not find unanimously that the mitigating factors outweighed the aggravating factors. Therefore, the jurors proceeded to step three, which directed them to determine whether death was warranted under all the circumstances. The jurors were unable to agree as to the punishment. Consequently, under section 565.030, RSMo 2010,[2] the adjudication of punishment went to the trial court. After considering all of the evidence, including the aggravating factor of depravity of mind found by the jury, the trial court sentenced Mr. McLaughlin to death. Mr. McLaughlin appealed his conviction and death sentence, and this Court affirmed. *State v. McLaughlin*, 265 S.W.3d 257, 259 (Mo. banc 2008). He then filed a motion asserting ten claims for post-conviction relief under Rule 29.15.

The judge presiding over Mr. McLaughlin's post-conviction relief proceedings was the same judge that presided over his trial in both the guilt and penalty phases. Mr. McLaughlin filed a motion to disqualify the judge on the ground that, because the judge imposed the death sentence during the trial, the judge had prejudged the facts and issues and could not be fair and impartial in adjudicating his claims of error in his Rule 29.15 motion. The motion court overruled Mr. McLaughlin's motion to disqualify and set an evidentiary hearing for three of his ten claims. After the hearing, the motion court issued detailed evidentiary findings and legal conclusions, denying each of Mr. McLaughlin's 10 claims. In its judgment, the motion court found that Mr. McLaughlin failed to demonstrate that his trial counsel were ineffective and further found that any claimed ineffective assistance did not result in prejudice. The motion court also found that Mr. McLaughlin's claim that the trial court improperly instructed the jury against considering records relied upon by mental health experts for the truth of the matter asserted was not cognizable in a motion for post-conviction relief and that the death penalty in Missouri is constitutional. Mr. McLaughlin appeals the denial of post-conviction relief.

## II. Standard of Review

 In reviewing the overruling of a motion for post-conviction relief, the mo-

**2.** Unless indicated otherwise, all statutory references are to RSMo 2011.

tion court's ruling is presumed correct. *Zink v. State,* 278 S.W.3d 170, 175 (Mo. banc 2009). A motion court's judgment will be overturned only when either its findings of fact or its conclusions of law are clearly erroneous. *Id.;* Rule 29.15(k). To overturn, the ruling must leave the appellate court with a "definite and firm impression that a mistake has been made." *Zink,* 278 S.W.3d at 175 (internal quotations omitted). Furthermore, Mr. McLaughlin is only entitled to an evidentiary hearing if: (1) he pleaded facts, not conclusions, warranting relief; (2) the facts alleged are not refuted by the record; and (3) the matters complained of resulted in prejudice to Mr. McLaughlin. *Webb v. State,* 334 S.W.3d 126, 128 (Mo. banc 2011).

■ To be entitled to post-conviction relief for ineffective assistance of counsel, the defendant must satisfy the two-prong *Strickland* test. First, the defendant must show that his attorney failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Second, the trial counsel's failure must prejudice the defendant. *Id.* Both of these prongs must be shown by a preponderance of the evidence to prove ineffective assistance of counsel. *Anderson v. State,* 196 S.W.3d 28, 33 (Mo. banc 2006).

■ To meet the performance prong of the *Strickland* test, Mr. McLaughlin must overcome a strong presumption that counsel's conduct was reasonable and effective. *Id.* To overcome this presumption, Mr. McLaughlin must point to "specific acts or omissions of counsel that, in light of all circumstances, fell outside the wide range of professional competent assistance." *Id.* A trial strategy decision may only serve as a basis for ineffective counsel if the decision is unreasonable. *Zink,* 278 S.W.3d at 176. The choice of one reasonable trial strategy over another is not ineffective assistance. *Id.* "[S]trategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable[.]" *Anderson,* 196 S.W.3d at 33 (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052).

■ To satisfy the prejudice prong of the *Strickland* test, Mr. McLaughlin must demonstrate that, absent the claimed errors, there is a reasonable probability that the outcome would be different. *Id.* A reasonable probability exists when there is "'a probability sufficient to undermine confidence in the outcome.'" *Id.* at 33–34 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Regarding a sentence of death, a defendant must show with reasonable probability that the jury or judge, balancing all the circumstances, would not have awarded the death penalty. *See id.* at 34.

### III. Issues on Appeal

On appeal, Mr. McLaughlin asserts 10 points of error, some of which are consolidated and reordered for ease of understanding. Mr. McLaughlin claims that the motion court erred in: (1) overruling his motion to disqualify the trial judge that sentenced him to death from presiding over the post-conviction relief proceedings. He also claims that the motion court erred in denying his claims that trial counsel were ineffective for failing to: (2) present expert testimony regarding his mental health and neuropsychological impairments as mitigating evidence in the penalty phase; (3) adduce evidence in the guilt and penalty phase regarding statements by Billy McLaughlin, Mr. McLaughlin's brother, that he raped Ms. Guenther on the night of the murder to refute the rape charge and aggravating circumstance; and

(4) call a DNA expert to challenge the testimony of the state's DNA expert and to establish that Billy McLaughlin contributed to the DNA found in the semen in Ms. Guenther's vagina.

Mr. McLaughlin further claims that the motion court erred in denying an evidentiary hearing for his claims of ineffective assistance of counsel for failing to: (5) request that the jury be instructed on statutory mitigating factors; (6) offer during the penalty phase Mr. McLaughlin's school, hospital, and jail records of his childhood and mental health issues and to object to the trial judge's instruction to the jury not to consider, for the truth of the matter asserted, the records on which the expert witnesses relied; (7) object to portions of the state's closing argument in the penalty phase referring to the jurors as soldiers and asking them to "send a message." Finally, Mr. McLaughlin claims that the motion court erred in (8) denying an evidentiary hearing on his claim that Missouri's death penalty is arbitrary and capricious as it does not narrow the class of persons eligible for the death penalty.

## 1. Motion to Disqualify the Trial Court Judge

Mr. McLaughlin claims that the motion judge erred in overruling the motion to disqualify him from presiding over the post-conviction relief proceeding. He claims that, due to the judge's sentencing him to death, the motion judge had prejudged the issues and could not act as a fair and impartial judge. Mr. McLaughlin also asserts that the continued involvement by the trial judge creates an appearance of impropriety and bias against him.

■■■■ While it is generally beneficial for the trial judge to conduct post-conviction hearings, principles of fundamental fairness may require disqualification in some circumstances. *Edwards v. State,*

200 S.W.3d 500, 521 (Mo. banc 2006). Disqualification is required where there "is an objective basis upon which a reasonable person could base a doubt" about the impartiality of the court. *State v. Smulls,* 935 S.W.2d 9, 26 (Mo. banc 1996). The objective basis providing a "disqualifying bias or prejudice must be one emanating from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learns from participation in the case." *Haynes v. State,* 937 S.W.2d 199, 202 (Mo. banc 1996). It is presumed "that a judge acts with honesty and integrity and will not preside over a trial in which he or she cannot be impartial." *Worthington v. State,* 166 S.W.3d 566, 579 (Mo. banc 2005). This Court reviews the court's determination as to whether disqualification is required for an abuse of discretion. *Edwards,* 200 S.W.3d at 521.

■■■■ Having the same judge during the post-conviction relief proceeding and at the trial, by itself does not amount to a disqualifying bias or prejudice. *See State v. Simmons,* 955 S.W.2d 752, 770 (Mo. banc 1997) (holding that a judge can consider, during a postconviction relief proceeding, the propriety of his or her actions during the trial proceeding and any interest in upholding trial court actions is not a disqualifying bias). It is no different in this case, in which the trial judge imposed the death sentence only after the jury found a statutory aggravating circumstance and did not find unanimously that the mitigating factors outweighed the aggravating factors. The imposition of the death penalty by the trial judge, or even a continuing belief by the judge after the postconviction hearing that the penalty is warranted, does not impinge on a judge's ability to impartially consider the claims presented in the Rule 29.15 motion. *See id.* ("The judge's continued belief after

the postconviction hearing that [the movant] was guilty does not impinge upon his ability to impartially consider [the movant's] Rule 29.15 claims.").

■ In Mr. McLaughlin's claim that the motion judge prejudged the issues and did not consider the evidence presented during the post-conviction hearing, Mr. McLaughlin fails to allege an extrajudicial source giving rise to the appearance of impropriety.[3] Mr. McLaughlin identifies three statements or actions by the motion judge that allegedly reveal prejudice against him. None of these actions or statements, however, reveals a disqualifying extrajudicial bias or prejudice against Mr. McLaughlin.

■ First, Mr. McLaughlin asserts that the motion judge questioned witnesses throughout the post-conviction relief hearing like an advocate. Mr. McLaughlin, however, fails to identify any questions by the motion judge revealing prejudice. The record shows that the motion judge asked questions to witnesses in an attempt to clarify the testimony of the witnesses. It is generally proper for a judge to question witnesses in an attempt to elicit the truth more fully. State v. Cain, 485 S.W.2d 60, 62 (Mo.1972). This Court's review of the transcript of the evidentiary hearing reveals that the motion judge's questioning was appropriate and proper and in no way indicates bias or prejudice against Mr. McLaughlin.

Second, Mr. McLaughlin asserts that the judge revealed his prejudice when he stated at the conclusion of the evidentiary hearing that he "worked on these findings throughout this proceeding" and then denied Mr. McLaughlin post-conviction relief. Mr. McLaughlin contends that the motion judge's statement shows that he already made a decision before hearing the evidence. This statement does not show that the motion judge prejudged the issue before hearing all of the evidence. To the contrary, it indicates that the judge not only considered the evidence at the evidentiary hearing but also considered the evidence and arguments throughout the entire proceeding before issuing the decision. The motion judge's statement does not evince a disqualifying prejudice.

Lastly, Mr. McLaughlin contends that the judge's decision not to have the state present its PowerPoint slides regarding DNA suggests prejudice. Finding an appearance of impropriety based on not requiring the state to present further evidence would disregard that the burden of proof in post-conviction proceedings is on the movant. Cole v. State, 152 S.W.3d 267, 268 (Mo. banc 2004). If the movant fails to meet his or her burden of proof, the motion court need not hear any evidence from the state to rule on the post-conviction relief motion. Limiting the amount of evidence presented by the state in this circumstance is a matter of preserving judicial resources, not prejudice. Additionally, the PowerPoint was about the fundamentals of DNA terminology. The motion judge's ruling made clear that he believed significant evidence already had been presented as to that issue.

The three actions and statements identified by Mr. McLaughlin do not reveal an

---

**3.** Mr. McLaughlin relies on the language in the code of judicial conduct, Canon 3E for the standard that "[a] judge shall recuse in a proceeding in which the judge's impartiality might reasonably be questioned." Rule 2.03, Canon 3E(1). This Court rejected that standard in *Haynes v. State*, 937 S.W.2d 199, 204 (Mo. banc 1996), because the "standard, without factual context, is subjective, leaving appellate courts at liberty to find a disqualifying bias from any hostile word, a maximum prison sentence or even an adverse discretionary ruling." *Id.*

extrajudicial basis from which a reasonable person could infer that the motion judge was biased or had prejudged any issue in the case. Furthermore, having the same judge during the post-conviction relief proceedings as the one who imposed the death sentence after the jury found a statutory aggravating circumstance does not amount to a disqualifying bias or prejudice. Mr. McLaughlin's claim that the judge erred in overruling his motion to disqualify is without merit.

## 2. Expert Testimony of Mental Health and Neuropsychological Impairments

Mr. McLaughlin claims that the motion court erred in denying his claim of ineffective assistance for his trial counsel's failure to call a qualified psychiatrist and neuropsychologist during the penalty phase. He claims that testimony from a neuropsychologist and a psychiatrist as to his mental health and mental impairment issues would reveal his impaired ability to appreciate the criminality of his conduct. According to Mr. McLaughlin, the lack of testimony from a psychiatrist and neuropsychologist deprived him of important mitigating evidence that would have resulted in a life sentence.

Mr. McLaughlin specifically argues that his trial counsel were ineffective for failing to conduct an adequate investigation of a psychiatrist, Dr. Keith Caruso, prior to retaining him. Mr. McLaughlin asserts that an adequate investigation prior to retaining Dr. Caruso would have revealed that Dr. Caruso was subject to a misconduct investigation during medical school and that trial counsel could have retained a different psychiatrist to testify on Mr. McLaughlin's behalf. Instead, trial counsel discovered the misconduct investigation during jury deliberations in the guilt phase and decided not to call Dr. Caruso to

testify. According to Mr. McLaughlin, this was not a reasonable strategic decision by the trial counsel but, instead, was the result of negligence by his trial counsel that deprived him of necessary mitigating evidence. This specific claim regarding the requisite investigation into Dr. Caruso, however, is not preserved for appeal.

In actions under Rule 29.15, "any allegations or issues that are not raised in the Rule 29.15 motion are waived on appeal." *Johnson v. State*, 333 S.W.3d 459, 471 (Mo. banc 2011) (citation omitted). "Pleading defects cannot be remedied by the presentation of evidence and refinement of a claim on appeal." *Id.* Furthermore, there is no plain error review in appeals from post-conviction judgments for claims that were not presented in the post-conviction motion. *Hoskins v. State*, 329 S.W.3d 695, 696–97 (Mo. banc 2010). In Mr. McLaughlin's Rule 29.15 motion for post-conviction relief, he alleged only that his trial counsel were ineffective for failing to present psychiatric testimony. At no point in his Rule 29.15 motion for post-conviction relief did he allege that his trial counsel were ineffective for failing to adequately investigate Dr. Caruso or otherwise allege error for failing to specifically call Dr. Caruso at trial. Consequently, his allegations regarding the requisite investigation into Dr. Caruso are not preserved for appeal and will not be addressed. *See Johnson*, 333 S.W.3d at 471.

Mr. McLaughlin's remaining arguments concerning ineffective assistance of counsel for failing to call a neuropsychologist or psychiatrist during the penalty phase at trial are preserved properly for appeal. In support of his claim, Mr. McLaughlin presented testimony at his Rule 29.15 evidentiary hearing from Dr. Robert Heilbronner, a clinical neuropsychologist, and Dr. Stephen Peterson, a psychiatrist. Dr. Heilbronner testified based on a series of

objective tests he performed on Mr. McLaughlin in preparation for the post-conviction proceeding, his review of Mr. McLaughlin's school, medical, and jail records, and the testimony of Drs. Cunningham, Accardo, Udziela, and Kulkamthorn at trial. He concluded that there was objective evidence that Mr. McLaughlin suffered brain damage at an early age in his life, likely due to his biological mother drinking alcohol during her pregnancy. Dr. Heilbronner further testified that Mr. McLaughlin had a full-scale IQ of 79, indicating borderline intellectual functioning. Dr. Heilbronner also testified that his conclusions were highly consistent with the testimony of the expert witnesses at trial.

Dr. Peterson, the psychiatrist, also testified regarding Mr. McLaughlin's mental capacity at the time of the crime. He performed psychiatric tests on Mr. McLaughlin prior to the post-conviction relief proceedings, interviewed Mr. McLaughlin and his family, and reviewed his school, hospital, and jail records. Based on his evaluation, Dr. Peterson concluded that Mr. McLaughlin suffered from various mental defects, including borderline intellectual functioning, specific learning disorder, intermittent explosive disorder, and borderline personality disorder. According to Dr. Peterson, these illnesses resulted in Mr. McLaughlin having limited capacity to conform his conduct to the requirements of law.

At the conclusion of the evidentiary hearing, the motion court denied Mr. McLaughlin's claim that his trial counsel were ineffective in failing to call a neuropsychologist or psychiatrist. The motion court found that the testimony of Dr. Heilbronner was the same in all substantial respects as the testimony of Dr. Accardo and other evidence presented at trial by Mr. McLaughlin's trial counsel. The motion court also found Dr. Peterson's testimony consistent in all substantial respects with that of Dr. Cunningham and the testimony of other defense experts presented by his trial counsel. As a consequence, the court concluded that Mr. McLaughlin failed to show that he was prejudiced by the failure of trial counsel to call a neuropsychologist or psychiatrist because the neuropsychological and psychiatric testimony presented at the motion hearing were cumulative to that presented at trial. In addition, the motion court noted that it was not unreasonable for Mr. McLaughlin's trial counsel to rely on the expert witnesses they retained in determining that additional experts were not required. As such, the trial court ruled that Mr. McLaughlin was not prejudiced in that the additional testimony would not have changed the jury's failure to find unanimously that the mitigating evidence outweighed the evidence in aggravation and would not have changed the trial court's decision to sentence him to death.

■■■■■■ The judgment of the motion court was not clearly erroneous in denying relief on Mr. McLaughlin's claim of ineffective assistance of counsel for failure to call a neuropsychologist or psychiatrist to testify at trial. As a prevailing professional standard, capital defense work requires counsel to " 'discover all reasonably available mitigating evidence[.]' " *Glass v. State*, 227 S.W.3d 463, 468–69 (Mo. banc 2007) (quoting *Wiggins v. Smith*, 539 U.S. 510, 524, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). Counsel has a duty to "conduct a reasonable investigation and to present evidence of impaired intellectual functioning—evidence that is inherently mitigating—in the penalty phase...." *Hutchison v. State*, 150 S.W.3d 292, 297 (Mo. banc 2004). However, counsel is "not obligated to shop for an expert witness who might provide more favorable testimony." *Johnson v. State*, 333 S.W.3d

459, 464 (Mo. banc 2011) (internal quotations omitted). " 'The duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste.' " *Strong v. State*, 263 S.W.3d 636, 652 (Mo. banc 2008) (quoting *Rompilla v. Beard*, 545 U.S. 374, 383, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005)). In this regard, strategic choices made by counsel "after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable...." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052.

■ In this case, Mr. McLaughlin's trial counsel made a reasonable strategic choice not to seek out additional expert witnesses, such as a neuropsychologist, to present mitigating evidence. Mr. McLaughlin's trial counsel testified at the Rule 29.15 post-conviction relief evidentiary hearing that, based on the advice of Dr. Cunningham and Dr. Caruso that additional testing or an additional expert opinion was not needed, they concluded that the mental health experts retained were sufficient to testify regarding Mr. McLaughlin's mental health issues. A reasonably competent attorney is entitled to rely on the advice of experts in determining whether additional testing or additional expert opinions are necessary. *See Lyons v. State*, 39 S.W.3d 32, 37–38 (Mo. banc 2001).

In *Lyons*, Andrew Lyons claimed that the overruling of his Rule 29.15 motion for post-conviction relief was clearly erroneous on the ground that his trial counsel was ineffective for failing to seek neuropsychological testing. *Id.* at 37. Mr. Lyons asserted that reasonably competent counsel would seek neuropsychological testing, similar to testing performed on him by a non-retained expert. *Id.* at 37–38. This Court held that Mr. Lyons' trial counsel was reasonable in relying on the initial report of his treating physicians, which found no evidence of brain damage, to conclude that neuropsychological testing would reveal no additional, beneficial information. *Id.* at 38. Furthermore, this Court found it reasonable for trial counsel to rely on the advice of a retained expert, who reviewed all of the reports regarding Mr. Lyons' mental health, in determining the extent of mental health testing that should be performed. *Id.*

Similar to *Lyons*, Mr. McLaughlin's trial counsel were reasonable in concluding that the retained experts were sufficient and additional experts, such as a neuropsychologist, would reveal no additional, beneficial information. Although *Lyons* involved advice from an expert that testing for brain impairments was unnecessary, this case involves expert advice from Dr. Cunningham and Dr. Caruso that additional expert opinions concerning Mr. McLaughlin's brain impairments, including from a neuropsychologist, were unnecessary. In making the decision, trial counsel knew that Dr. Cunningham was an expert psychologist and conducted extensive interviews of Mr. McLaughlin, his biological family, and his adoptive family. Dr. Cunningham also reviewed records of Mr. McLaughlin's prior mental health evaluations. Based on his analysis, Dr. Cunningham formed conclusions about Mr. McLaughlin's neurological impairments through adulthood as well as neurodevelopmental problems during his childhood. Trial counsel also knew that Dr. Caruso, a psychiatrist, formed his advice not to hire another expert or do more testing after an extensive interview of Mr. McLaughlin and his review of Mr. McLaughlin's school records, psychiatric records, and medical rec-

ords.[4] Finally, trial counsel also had the testimony of Dr. Accardo, who identified Mr. McLaughlin as having brain damage at the age of nine after conducting numerous neurological tests. Based on these considerations, it was reasonable for Mr. McLaughlin's trial counsel to conclude that the existing expert testimony regarding his brain impairments was sufficient and that additional testimony from other experts, such as a neuropsychologist, was unnecessary. *See id.*

Mr. McLaughlin's trial counsel also made a reasonable strategic decision to not call a psychiatrist. The representation by counsel is presumed to be effective, and their decisions are presumed to be strategic. *State v. Kenley,* 952 S.W.2d 250, 268 (Mo. banc 1997). Trial counsel's selection of which expert witnesses to call at trial is generally a question of trial strategy and is virtually unchallengeable. *Goodwin v. State,* 191 S.W.3d 20, 29 (Mo. banc 2006). While counsel has a duty to present mitigating evidence of impaired intellectual functioning if relevant, counsel is not obligated to shop for an expert witness who might provide the most or more favorable testimony. *See Hutchison,* 150 S.W.3d at 308; *Kenley,* 952 S.W.2d at 268. Through the testimony of Drs. Cunningham, Accardo, Udziela, and Kulkamthorn at trial, Mr. McLaughlin's trial counsel presented mitigating evidence of impaired intellectual functioning and testified at the Rule 29.15 evidentiary hearing that they did not call Dr. Caruso, a psychiatrist, due to the existence of impeaching evidence that may have harmed the defense's case. The selection of expert witnesses is a matter of trial strategy that cannot be challenged in a Rule 29.15 proceeding. *See Goodwin,*

191 S.W.3d at 29. Mr. McLaughlin's trial counsel were not ineffective for failing to present the testimony of Dr. Caruso or an alternative psychiatrist that would present more favorable testimony of Mr. McLaughlin's mental impairments. *See id.; see also Kenley,* 952 S.W.2d at 268.

 Even assuming that Mr. McLaughlin's trial counsel were ineffective for failing to present evidence of a psychiatrist or neuropsychologist, Mr. McLaughlin was not prejudiced. To show ineffective assistance of counsel based on failure to present an expert witness, Mr. McLaughlin is required to show what the evidence would have been if called. *State v. Twenter,* 818 S.W.2d 628, 636 (Mo. banc 1991). Failure to present evidence that is cumulative to that presented at trial does not constitute ineffective assistance of counsel. *Forrest v. State,* 290 S.W.3d 704, 709 (Mo. banc 2009).

At his Rule 29.15 evidentiary hearing, the evidence presented by Mr. McLaughlin to support his claim of ineffective assistance of counsel for failing to call a psychiatrist and neuropsychologist was cumulative to the expert testimony presented at trial. As previously discussed, Mr. McLaughlin presented the testimony of Dr. Heilbronner, a neuropsychologist, at his Rule 29.15 evidentiary hearing. Dr. Heilbronner tested Mr. McLaughlin during the proceedings and concluded, based on objective test results, that Mr. McLaughlin had a low IQ, borderline intellectual functioning, and that he suffered brain damage at an early age in his life. This testimony is consistent with and cumulative to that of Dr. Udziela and Dr. Accardo. Dr. Udziela and Dr. Accardo testified at trial that Mr. McLaughlin had

---

4. Counsel's decision at the penalty phase of trial to not call Dr. Caruso to testify does not affect the reasonableness of relying on Dr. Caruso's expert opinion as to whether additional expert testimony concerning Mr. McLaughlin's brain impairment was necessary.

a low IQ, suffered from various disorders arising from impaired intellectual functioning, and had neurological brain impairments. In fact, Dr. Heilbronner testified that his conclusions from the tests performed on Mr. McLaughlin were "highly consistent" with the conclusions by Dr. Accardo and Dr. Udziela from similar tests.

Under the circumstances, the timing of Dr. Heilbronner's tests, which occurred during Mr. McLaughlin's adulthood, does not alter the cumulative nature of his testimony with that of Drs. Udziela and Accardo. Drs. Udziela and Accardo based their testimony on tests performed on Mr. McLaughlin at the age of 9, which showed that Mr. McLaughlin had brain damage. Dr. Heilbronner tested Mr. McLaughlin in adulthood, only to conclude that Mr. McLaughlin suffered brain damage at an early age. These opinions are duplicative in nature: Mr. McLaughlin suffered from brain damage at an early age. Similarly, Dr. Cunningham testified at trial concerning Mr. McLaughlin's mental deficiencies at adulthood, specifically including that he has a low IQ and various intellectual impairments leading into his adulthood and during the incident.

Mr. McLaughlin also was not prejudiced by the failure of trial counsel to present testimony from a psychiatrist. In his Rule 29.15 evidentiary hearing, Mr. McLaughlin presented expert testimony from Dr. Peterson, a psychiatrist. Dr. Peterson performed tests on Mr. McLaughlin during the post-conviction proceedings and diagnosed him with borderline intellectual and personality disorders, intermittent explosive disorder, and learning disorders. This evidence is cumulative to the testimony of Dr. Cunningham that Mr. McLaughlin suffered from intelligence disorders arising from personality disorders, intellectual disorders, and neurological problems throughout his childhood and adulthood. Mr. McLaughlin did not suffer prejudice due to the failure to present the testimony from a psychiatrist such as Dr. Peterson.

Mr. McLaughlin has failed to show that his trial counsel were unreasonable in failing to present testimony from a neuropsychologist and psychiatrist. Furthermore, he has failed to prove how any such failure, if shown, would result in prejudice due to the cumulative nature of the evidence he presented at the Rule 29.15 evidentiary hearing compared to that presented at trial. His claim of ineffective assistance of counsel under *Strickland*, therefore, is without merit. The motion court did not clearly err in overruling his Rule 29.15 motion for post-conviction relief these grounds.

### 3. Evidence of Statements by Billy McLaughlin

Mr. McLaughlin claims that the motion court erred in failing to find his trial counsel ineffective for not investigating and presenting during the guilt and penalty phase of trial the testimony of witnesses to whom Billy McLaughlin, Mr. McLaughlin's brother, allegedly admitted that he raped Ms. Guenther on the night of the murder. He asserts that the testimony of Shawn Delgado, Tammy Sinclair, and Anthony Connor on this matter would have rebutted the charge of rape against Mr. McLaughlin. As a result, Mr. McLaughlin contends that there is a reasonable probability that he would not have been convicted of rape and would have received a life sentence during the penalty phase of trial.

To the extent that Mr. McLaughlin claims that his trial counsel were ineffective for failing to call Ms. Delgado, his cousin, during the penalty phase of trial, the contention is without merit. Mr. McLaughlin's trial counsel specifically tried to call Ms. Delgado during the penal-

ty phase of trial to testify regarding statements made to her by Billy McLaughlin. Ms. Delgado testified in an offer of proof outside of the presence of the jury [5] and the trial court, after hearing her testimony, excluded the statements as inadmissible hearsay. The trial court ruled that .there was an insufficient basis to find the statements made by Billy McLaughlin to Ms. Delgado admissible as declarations against penal interest for due process purposes.

 Mr. McLaughlin's trial counsel cannot be held ineffective for failing to call a witness they unsuccessfully attempted to call during the penalty phase of trial. Mr. McLaughlin does not claim his trial counsel were ineffective for failing to make an adequate offer of proof or failing to preserve a claim regarding the admissibility of Ms. Delgado's testimony. Instead, Mr. McLaughlin seeks to challenge the trial court's evidentiary ruling as a matter of trial court err, which is not a cognizable claim in a Rule 29.15 proceeding. *State v. Ferguson*, 20 S.W.3d 485, 509 (Mo. banc 2000). Accordingly, the motion court did not clearly err in denying Mr. McLaughlin's claim for post-conviction relief on the basis of failing to present the testimony of Ms. Delgado during the penalty phase of trial. However, because Mr. McLaughlin's trial counsel did not attempt to call Ms. Delgado during the guilt phase and never attempted to call Mr. Connor and Ms. Sinclair during either phase of trial, Mr. McLaughlin presents a cognizable claim for post-conviction relief on those grounds.

Mr. McLaughlin presented the testimony of Ms. Delgado, Mr. Connor, and Ms.

Sinclair during the Rule 29.15 evidentiary hearing. Ms. Delgado testified about the conversation she had with Billy McLaughlin in her grandmother's kitchen, approximately five to six months after the murder. She testified that Billy McLaughlin said he was there during the murder, but was clear that Mr. McLaughlin actually committed the murder. According to her testimony, Billy McLaughlin told her that Mr. McLaughlin cut Ms. Guenther from ear-to-ear and from her neck to her pelvic bone. When Ms. Delgado was asked whether Billy McLaughlin told her he had sex with Ms. Guenther's body, she was first unable to recall but testified later that Billy McLaughlin did in fact say that he raped Ms. Guenther.

Mr. Connor's testimony at the Rule 29.15 evidentiary hearing was consistent with that of Ms. Delgado. Mr. Connor testified that Billy McLaughlin told him and Ms. Delgado that he tied up Ms. Guenther and had sex with her body. Mr. Connor testified that he was never contacted by Mr. McLaughlin's trial counsel regarding this testimony. According to Mr. Connor, he would have testified as to this information had he been called at trial.

Ms. Sinclair testified at the Rule 29.15 evidentiary hearing that Billy McLaughlin told her that he was with Mr. McLaughlin during the murder and encouraged Mr. McLaughlin to rape her in the back seat of the car while traveling to St. Louis. According to Ms. Sinclair, Billy McLaughlin said that, after Mr. McLaughlin refused by saying "no, man. I already had it," Billy McLaughlin went into the backseat and

---

**5.** According to Ms. Delgado's testimony during the offer of proof, Billy McLaughlin told her that he was involved in Ms. Guenther's murder in that he tied her legs together and helped drag her to the riverbank. Ms. Delgado testified that Billy McLaughlin said he saw Mr. McLaughlin stab Ms. Guenther in the

back and that Mr. McLaughlin cut her from ear-to-ear and from her neck to her pelvic bone. Billy McLaughlin also purportedly told Ms. Delgado that Mr. McLaughlin cut Ms. Guenther again at the river and had sex with her.

raped her. Ms. Sinclair testified that she ended the conversation after hearing this statement.

Mr. McLaughlin's trial attorneys also testified at the Rule 29.15 evidentiary hearing. They testified that they were aware of the statements Billy McLaughlin allegedly made to Ms. Delgado, Mr. Connor, and Ms. Sinclair. They chose not to investigate further and present the evidence because the statements by Billy McLaughlin were not helpful to their defense strategy as they did not serve to exculpate Mr. McLaughlin from his rape charge and were inconsistent with their argument that a person cannot rape a dead body.

After hearing all of the evidence at the hearing, the motion court denied Mr. McLaughlin's claim of ineffective assistance of counsel for not presenting the testimony of Ms. Delgado, during the guilt phase of trial, and Mr. Connor and Ms. Sinclair, during both phases of trial. The motion court ruled that their testimony regarding statements made by Billy McLaughlin constituted hearsay that was not admissible as statements against penal interest under the narrow exception recognized by *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), during the guilt phase of trial, and *Green v. Georgia*, 442 U.S. 95, 96, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) (per curiam), for the penalty phase of trial. The court specifically found that the statements were unreliable because they were made multiple months after the incident, were not spontaneously made, and did not corroborate with other evidence. The trial court also found that the statements would not have exonerated Mr. McLaughlin. As a result, the motion court ruled that the testimony was inadmissible and, therefore, the attorneys were not ineffective for failing to present it.

The judgment of the motion court was not clearly erroneous in denying relief on Mr. McLaughlin's claim of ineffective assistance of counsel for failure to present the testimony of Ms. Delgado, during the guilt phase of trial, and Mr. Connor and Ms. Sinclair, during both the guilt phase and penalty phase of trial. Counsel is not ineffective for failing to present evidence that is inadmissible. *Twenter,* 818 S.W.2d at 638. As a general rule, statements against penal interests are not admissible as an exception to the rule against admitting hearsay in Missouri. *State v. Blankenship,* 830 S.W.2d 1, 6 (Mo. banc 1992). Notwithstanding the general inadmissibility of statements against penal interests, such statements may be admissible in the guilt or penalty phase of trial as required by the Due Process Clause. *Id.* at 6–7. The testimony of Ms. Delgado, Mr. Connor, and Ms. Sinclair regarding Billy McLaughlin's statements, however, does not fall under either constitutionally based exception.

The United States Supreme Court case of *Chambers v. Mississippi* set forth the constitutionally based exception to the rule against the admission of hearsay during the guilt phase of trial, which this Court applies. *Chambers,* 410 U.S. 284, 93 S.Ct. 1038; *see Blankenship,* 830 S.W.2d at 7. In *Chambers,* the Supreme Court held that the rule against the admission of hearsay must give way under circumstances in which: (1) the hearsay statements were made under circumstances providing considerable indicia of reliability; and (2) the statements, if believed, would have exonerated the defendant. *Id.* at 300–02, 93 S.Ct. 1038. The Court also considered three factors in determining whether the statements were reliable: (1) the confessions were "in a real sense self-incriminatory and unquestionably against interest;" (2) the confessions were "made spontaneously

to a close acquaintance shortly after the murder had occurred;" and (3) the confessions were corroborated by other evidence in the case. *Id.* at 300–01, 93 S.Ct. 1038.

A similar constitutionally based exception to the rule against the admission of hearsay applies to the admissibility of hearsay evidence in the penalty phase of capital trials. In *Green v. Georgia,* a defendant facing the death penalty for murder attempted to present the testimony of a witness claiming that another man confessed to him about committing the murder. 442 U.S. at 96, 99 S.Ct. 2150. The trial court ruled the testimony inadmissible as hearsay, and the Georgia Supreme Court affirmed. *Id.* at 95, 99 S.Ct. 2150. On appeal, the United States Supreme Court reversed and remanded, stating that the right to fair trial on the issue of punishment requires admission of the testimony as it was "highly relevant to a critical issue in the punishment phase of trial and substantial reasons existed to assume its reliability." *Id.* at 97, 99 S.Ct. 2150 (internal citations omitted). In determining the reliability of the hearsay statement, the Supreme Court considered the same factors as in *Chambers. See id.* at 97, 99 S.Ct. 2150.

The testimony of Ms. Delgado, Mr. Connor, and Ms. Sinclair regarding Billy McLaughlin's hearsay statements were not admissible under the constitutionally mandated exception set forth in *Chambers,* for the guilt phase of trial, or *Green,* for the penalty phase of trial. First, the hearsay statements were not made under circumstances providing considerable indicia of reliability. While the testimony that Billy McLaughlin said he participated in the murder and raped Ms. Guenther are self-incriminatory and unquestionably against his penal interests, these statements were not made spontaneously shortly after the murder. According to the testimony of Ms. Delgado and Mr. Connor, their conversation with Billy McLaughlin took place approximately five or six months after the murder, which prompted Ms. Sinclair to initiate her even later conversation with Billy McLaughlin. Under these circumstances, the hearsay statements by Billy McLaughlin were not made spontaneously and did not occur shortly after the murder. *See Smulls,* 935 S.W.2d at 21 (finding that a statement made more than two months after the crimes occurred was not spontaneously made). Based on the span of time between the murder and the hearsay statements, Billy McLaughlin's statements, although self-incriminatory, lack considerable indicia of reliability to be admissible under *Chambers* and *Green.*[6]

The hearsay statements of Billy McLaughlin also fail to exonerate Mr. McLaughlin of guilt on his rape charge and are not a mitigating factor in the punishment phase of trial. The testimony of Mr. Connor regarding Billy McLaughlin's statements that he raped Ms. Guenther only relate to his actions and not to those of Mr. McLaughlin. The hearsay statements do not serve to exonerate Mr. McLaughlin and in no way contradict the

---

6. Billy McLaughlin's hearsay statements also did not corroborate other evidence at trial. Contrary to Billy McLaughlin's statements that Ms. Guenther was stabbed in the back and was cut from ear-to-ear and from her neck to her pelvic bone, Ms. Guenther's autopsy revealed no such wounds. The only injuries Ms. Guenther had on her torso were three relatively small stab wounds, none of which was on her back. Billy McLaughlin's statements asserting that he was present during the murder also are negated by the testimony of his roommate, who testified at trial that Billy McLaughlin was with him in the apartment the entire time when Mr. McLaughlin left on the night of the murder and returned later covered in blood.

evidence presented by the state to prove the rape charge against Mr. McLaughlin. In fact, Billy McLaughlin's hearsay statements support the rape charge against Mr. McLaughlin. Ms. Delgado specifically testified that Billy McLaughlin said Mr. McLaughlin raped Ms. Guenther. Because Billy McLaughlin's statements do not exonerate Mr. McLaughlin of the rape charge against him, the statements are not admissible under *Chambers* in the guilt phase of trial. Furthermore, as incriminating Mr. McLaughlin, the statements are not "highly relevant to a critical issue in the punishment phase of trial" to be admissible in the penalty phase under *Green*.

The motion court did not clearly err in denying Mr. McLaughlin's claim that his trial counsel were ineffective for failing to present the testimony of Ms. Delgado, Mr. Connor, and Ms. Sinclair regarding statements made by Billy McLaughlin that he raped Ms. Guenther. The hearsay statements do not meet the standards under *Chambers* and *Green* for the constitutionally based exception to the rule against the admission of hearsay. Because the statements are not admissible, Mr. McLaughlin's trial counsel were not ineffective for failing to present the witnesses. *See Twenter*, 818 S.W.2d at 638.

### 4. Failure to Challenge DNA Evidence and Implicate Billy McLaughlin

Mr. McLaughlin claims that the motion court erred in denying his claim of ineffective assistance of counsel for failing to call a DNA expert during the guilt phase of trial. He contends that a DNA expert could challenge the state's DNA analysis and implicate Billy McLaughlin in the rape as a contributor of the DNA evidence. According to Mr. McLaughlin, there is a reasonable probability that testimony from a DNA expert on his behalf would have

rebutted the rape charge and aggravator, resulting in a life sentence.

During the guilt phase of trial, the state presented testimony from Alan Derickson, a forensic scientist at the St. Louis County crime laboratory, regarding his DNA analysis of the semen recovered from Ms. Guenther's vagina. Mr. Derickson described the analysis he performed in order to identify the contributors of the genetic material, designated as "F2." Although he was unsuccessful in isolating the male fraction of the genetic material through a chemical procedure, Mr. Derickson was able to identify alleles appearing at 13th different loci in the genetic mixture, including a 14th locus that reveals the sex of the individuals contributing the genetic material. Mr. Derickson found that twelve of the thirteen alleles in the F2 mixture matched the genetic profile of Mr. McLaughlin and Ms. Guenther and, according to standard procedure, excluded the remaining locus for statistical purposes after finding an extra allele. After determining that Mr. McLaughlin and Ms. Guenther could not be excluded as contributors, Mr. Derickson submitted the genetic profile to the FBI database to determine that, in the Caucasian population, only 1 in every 2.2 million individuals could contribute to the mixture.

During the post-conviction evidentiary hearing, Mr. McLaughlin presented testimony from Dr. Dean Stetler, a geneticist from the University of Kansas. Dr. Stetler reviewed the DNA analysis by Mr. Derickson and also tested DNA from Billy McLaughlin and Mr. McLaughlin's biological parents, Larry Daffner and Jill Turner, all of which was obtained after the trial. Dr. Stetler testified that, although his tests revealed that Mr. McLaughlin is a potential contributor, he also concluded that Billy McLaughlin could be a potential contributor to the genetic material. He

also testified that there may possibly be a fourth contributor. Based on a comparison of the genetic profile of Mr. McLaughlin's biological parents, Dr. Stetler testified that the odds that Billy McLaughlin could have the same genetic profile as Mr. McLaughlin in the tested loci are 1 in 16,000.

Mr. McLaughlin's trial counsel also testified at the post-conviction evidentiary hearing. According to their testimony, they had the DNA material tested by an independent consultant. The independent consultant informed Mr. McLaughlin's trial counsel that the testing revealed the existence of an extra allele in the DNA mixture, but, consistent with the state's analysis, the tests did not exclude Mr. McLaughlin as a potential contributor of the DNA evidence. Because the DNA evidence did not exclude Mr. McLaughlin as a contributor of the DNA evidence as found by the independent consultant, the trial counsel did not challenge the state's analysis at trial.

Also during the post-conviction evidentiary hearing, the state presented testimony from Alan Derickson, the forensic scientist at the St. Louis County police crime laboratory who testified at trial. Mr. Derickson testified that there indeed existed an extra allele in the DNA mixture, but that the inability to reproduce it suggested that it may be an "artifact"—a result of machine error. In addition, Mr. Derickson testified that the DNA analysis excluded Billy McLaughlin as a contributor because Billy McLaughlin possessed certain alleles that were not present in the DNA mixture. Mr. Derickson also repeated his conclusion made at trial that Mr. McLaughlin could not be excluded as a contributor to the DNA mixture.

After considering the evidence presented at the Rule 29.15 hearing, the motion court denied Mr. McLaughlin's claim of ineffective assistance of counsel for the failure to call a DNA expert during the guilt phase of trial to discuss Billy McLaughlin as a potential contributor to the DNA material. The motion court first rejected Mr. McLaughlin's contention that his trial counsel could have implicated Billy McLaughlin by using the DNA profile of his biological parents. The motion court found that Dr. Stetler's use of the DNA profile of Mr. McLaughlin's biological parents to calculate the odds that Billy McLaughlin could have contributed to the DNA material was not scientifically credible and, therefore, would not have benefited Mr. McLaughlin's case.

Next, the motion court found that Mr. McLaughlin waived his claim insofar as it attempts to assert that Billy McLaughlin contributed to the DNA evidence based on the DNA profile of Billy McLaughlin. The motion court noted that Mr. McLaughlin did not have Billy McLaughlin's DNA profile and did not make any arguments regarding Billy McLaughlin's DNA profile— as opposed to that of his biological parents—until it was obtained through an unrelated criminal case that occurred after his motion for postconviction relief was filed. The motion court found that Mr. McLaughlin's failure to present such an argument in his motion for post-conviction relief waived his claim on that ground. Furthermore, the motion court stated that, even if Mr. McLaughlin had not waived his claim, Mr. McLaughlin's trial counsel acted reasonably in deciding not to present testimony by a DNA expert because the evidence did not exclude Mr. McLaughlin as a contributor. The motion court held that Mr. McLaughlin's trial counsel were entitled to rely on the advice of their independent consultant that the DNA evidence did not exclude Mr. McLaughlin and were not required "to go shopping for another expert who could testify differently."

■ The motion court did not clearly err in denying relief on Mr. McLaughlin's claim of ineffective assistance of counsel for failure to call a DNA expert during the guilt phase of trial to challenge the testimony of Mr. Derickson or implicate Billy McLaughlin as a potential contributor of the DNA material. "In actions under Rule 29.15, any allegations or issues that are not raised in the Rule 29.15 motion are waived on appeal." *State v. Clay*, 975 S.W.2d 121, 141–42 (Mo. banc 1998). For claims properly raised in the Rule 29.15 motion, there is no ineffective assistance of counsel for a reasonable trial strategy decision. *Zink*, 278 S.W.3d at 176. So long as the strategic choice is made after a thorough investigation of the law and the facts as to the plausible options, that decision is "virtually unchallengeable." *Anderson*, 196 S.W.3d at 33.

The motion court properly found that Mr. McLaughlin failed to raise his allegations regarding the DNA profile of Billy McLaughlin's and that those allegations, therefore, were waived. Mr. McLaughlin's motion for post-conviction relief alleged only that his trial counsel were ineffective for failing to obtain the DNA profile of Mr. McLaughlin's parents to implicate Billy McLaughlin as a potential contributor. The Rule 29.15 motion does not allege that his trial counsel were ineffective for failing to obtain Billy McLaughlin's DNA profile. It was only after Mr. McLaughlin obtained Billy McLaughlin's DNA profile from the unrelated criminal case, which occurred after he filed his motion for post-conviction relief, that he presented arguments relating to Billy McLaughlin's DNA. Accordingly, the circuit court did not clearly err in determining that Mr. McLaughlin waived his claim to the extent that it relies on Billy McLaughlin's DNA profile. *See Clay*, 975 S.W.2d at 141–42.

■ Mr. McLaughlin also fails to show that his trial counsel were ineffective based the claim presented in his motion for post-conviction relief. The decision by Mr. McLaughlin's trial counsel to not conduct additional investigation regarding DNA evidence and present expert testimony at trial was a matter of reasonable trial strategy. After receiving the DNA analysis report from the St. Louis County crime laboratory, the trial counsel submitted the DNA material to an independent DNA consultant for testing. Based on the consultant's report that the DNA evidence did not serve to exclude Mr. McLaughlin as a potential contributor, trial counsel chose not to obtain further testing or to call a DNA expert at trial. Under the circumstances, it was a reasonable trial strategy decision for his trial counsel to rely on the expert opinions of their consultant and focus on evidence that exculpates Mr. McLaughlin rather than that which potentially inculpates Billy McLaughlin.

■ Furthermore, Mr. McLaughlin fails to show how testimony from a DNA expert would have benefited his case. To prevail on a claim that counsel was ineffective for failing to call an expert witness at trial, Mr. McLaughlin must show that: (1) the expert existed at the time of trial; (2) the witness could be located through reasonable investigation; and (3) the testimony would have benefited the defense. *Zink*, 278 S.W.3d at 179. During the post-conviction evidentiary hearing, Dr. Stetler testified that his analysis of the DNA material in Ms. Guenther's vagina did not exclude Mr. McLaughlin as a contributor to that material. While Dr. Stetler calculated an increased probability that Billy McLaughlin could have contributed to the DNA material using the DNA profile of Mr. McLaughlin's biological parents, Dr. Stetler testified that such analysis only establishes a probability that the biological

parents' offspring—either Mr. McLaughlin or Billy McLaughlin—contributed to the DNA material. Because Dr. Stetler's testimony would not have excluded Mr. McLaughlin as a contributor to the DNA material and does not establish a reasonable probability that Billy McLaughlin was in fact a contributor, Mr. McLaughlin fails to show that testimony from a DNA expert would have benefited his case.[7] The motion court was not clearly erroneous in denying Mr. McLaughlin's claim of ineffective assistance of counsel on this ground.

### 5. Failure to Instruct Jury about Statutory Mitigating Factors

Mr. McLaughlin claims that the motion court erred in denying an evidentiary hearing on his claim of ineffective assistance of counsel for their decision to submit a general mitigation instruction to the jury in lieu of an instruction with specific statutory mitigators set forth in section 565.032.3. Mr. McLaughlin contends that instructing the jury about the specific statutory mitigating factors would have resulted in the jury properly assessing the mitigating factors, resulting in a life sentence. This claim is without merit.

In *Glass v. State*, this Court held that a motion court did not clearly err in denying a claim that trial counsel was ineffective for submitting a general mitigating instruction instead of a specific statutory mitigator instruction. 227 S.W.3d at 475. Trial counsel in *Glass* testified that a general mitigating circumstance instruction was best because it "permits the jury to consider any fact as mitigation" and also that the jury does not unduly focus on any one factor or juxtapose a statutory mitigating circumstance against the statutory aggravating circumstances. *Id.* Because this was a reasonable trial strategy decision and no prejudice resulted, the trial counsel was not ineffective. *Id.*

■■■ In this case, Mr. McLaughlin's trial counsel made a reasonable decision of trial strategy to submit a general mitigating instruction instead of a specific statutory mitigator instruction. When asked by the trial judge the purpose of the general mitigating instruction, counsel responded that it was a matter of legal strategy. Trial counsel further clarified, during the Rule 29.15 evidentiary hearing, that "we're better off without them" because "it tends to limit the jury." Mr. McLaughlin contends that this is an unreasonable trial strategy because trial counsel should ensure that the jury understands the law so that it can give full effect to all mitigating evidence. While a statutory mitigator instruction would identify specific mitigating factors for the jury, *Glass* shows that a general mitigating instruction reduces the likelihood that the jury will focus unduly on any one factor and allows it to consider all mitigating facts. Mr. McLaughlin's trial counsel, therefore, made a reasonable trial strategy decision to choose a general mitigating instruction instead of a statutory mitigator instruction. The motion court did not clearly err in denying Mr. McLaughlin's claim.

### 6. Failure to Offer School, Hospital, and Jail Records of Medical Treatment

Mr. McLaughlin claims that the motion court erred in denying an evidentiary hearing on his claim of ineffective assistance of counsel for failing to present school, hospital, and jail records concerning his medical treatment as mitigating evidence during the penalty phase of trial. Similarly, Mr. McLaughlin claims that the

---

7. Even with Dr. Stetler's analysis of Billy McLaughlin's DNA profile, it did not exclude Mr. McLaughlin as a contributor to the DNA mixture.

motion court erred in denying an evidentiary hearing on his claim of ineffective assistance of counsel for his trial counsel's failure to object to the trial court's instruction that the content of his school, hospital, and jail records, as discussed by expert witnesses, could be considered only as a basis for the expert opinions and not for the truth of the matter asserted. He contends that the absence of school, hospital, and jail records deprived the jury of important mitigating evidence that would have resulted in a life sentence.

The school, hospital, and jail records reveal the difficulties Mr. McLaughlin encountered in his life. Mr. McLaughlin's school records indicate that he struggled during school. The records show that Mr. McLaughlin suffered from abuse and neglect during the first three years of his life and that he suffered from language and other learning and behavioral disabilities. Records from seventh grade show that Mr. McLaughlin continued to have difficulties and, at one point, talked about suicide. His hospital records showed that he was prescribed medication for depression and was diagnosed as having borderline personality disorder. Lastly, his jail records reveal that Mr. McLaughlin was diagnosed by a psychiatrist as bipolar and depressed.

The motion court found that Mr. McLaughlin was not entitled to an evidentiary hearing on his claim of ineffective assistance for failure to present the records because Mr. McLaughlin failed to show that he was prejudiced by the failure. The motion court found that Mr. McLaughlin presented "abundant evidence of his mental health problems and his struggles in school before the jury" and that the additional records would have been cumulative. The motion court also held that Mr. McLaughlin was not entitled to an evidentiary hearing for his claim of ineffective assistance for failure to object

to the trial court's limiting instruction because it was proper for the trial court to instruct the jury to consider the records solely as a basis for the expert's opinion.

Under the circumstances, Mr. McLaughlin was not entitled to an evidentiary hearing on his claims that his trial counsel were ineffective for failing to present records or object to the trial court's hearsay instruction regarding those records. To be entitled to an evidentiary hearing involving a claim of ineffective assistance of counsel, Mr. McLaughlin must "allege facts, unrefuted by the record, that (1) trial counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney and (2) he was thereby prejudiced." *Webb v. State*, 334 S.W.3d 126, 128 (Mo. banc 2011). The failure to develop or introduce cumulative evidence that merely corroborates other evidence at trial is not ineffective assistance of counsel. *Forrest*, 290 S.W.3d at 709; *see also Johnson*, 333 S.W.3d at 468.

The facts shown in the school, hospital, and jail records are cumulative to the evidence presented by Mr. McLaughlin's trial counsel during the penalty phase of trial. Similar to his school records showing childhood abuse and neglect, Mr. McLaughlin's biological aunt, Ms. Sinclair, testified about his abusive and alcoholic biological father during the three years Mr. McLaughlin lived with him. Ms. Delgado, Mr. McLaughlin's cousin, also testified that Mr. McLaughlin's adoptive home during his childhood was referred to as the "house of horrors." Furthermore, Mr. McLaughlin's trial counsel presented testimony from Louann McLaughlin, Mr. McLaughlin's biological sister, about Mr. McLaughlin's continuing difficulties at home and at school throughout his childhood, including numerous fights both at home and at school. The school records

indicating that Mr. McLaughlin had an abusive childhood, while admissible, merely corroborate the testimony of Ms. Sinclair, Ms. Delgado, and Ms. McLaughlin. The prosecution did not suggest that their testimony was fabricated, and there is no basis to think that this additional evidence would have made a difference at trial.[8]

The mental health problems shown by the hospital and jail records also duplicate other evidence presented at trial. Just as the hospital and jail records indicate that Mr. McLaughlin was depressed, was medicated for that depression, and that he had borderline personality order, these conditions were fully described by the testimony of Drs. Cunningham and Kulkamthorn, as well as Mr. McLaughlin's friend, Kimberly Barrett. Dr. Cunningham specifically testified as to his conclusions that Mr. McLaughlin suffered from brain impairment and cognitive, language, and attentional disorders, and Dr. Kulkamthorn testified regarding his diagnosis that Mr. McLaughlin suffered from depression and his prescription of Paxil to treat that depression. Ms. Barrett also testified about Mr. McLaughlin's need to take medicine, stating that, after she took him to a mental hospital a few months after the murder, she was instructed upon his release to make sure he took his medications. In addition, Drs. Udziela and Accardo testified regarding Mr. McLaughlin's full-scale IQ of 82 and that he showed signs of brain impairment. They also diagnosed him with attention deficit disorder and language disorder. Although the records were not considered for the truth of the matter asserted, each defense expert extensively referenced the information in those records as a supporting basis of their conclusions. Lastly, Virginia Aurich, a friend of Ms. Guenther, testified that she saw Mr. McLaughlin take medication for bipolar disorder. The prosecution did not claim that these conditions were a recent fabrication or would not be supported by medical or jail records.

Each of the cases cited by Mr. McLaughlin in support of his claim of ineffective assistance of counsel for failure to admit the school, hospital, and jail records are distinguishable from this case. He specifically cites *Williams v. Taylor*, 529 U.S. 362, 396, 120 S.Ct. 1495, 1514, 146 L.Ed.2d 389 (2000); *Hutchison*, 150 S.W.3d 292; and *Taylor v. State*, 262 S.W.3d 231 (Mo. banc 2008).

In *Williams*, the United States Supreme Court found the defendant's trial counsel ineffective when they failed to discover, during an investigation occurring only a week before the penalty phase, extensive records of the defendant's nightmarish childhood, that he was "borderline mentally retarded," and multiple witnesses that would have testified on the defendant's behalf. *Id.* at 395–96, 120 S.Ct. 1495. The Court found that the lack of such evidence prejudiced the defendant because it raised a reasonably probability that the result of the sentencing proceeding would have been different. *Id.* at 399, 120 S.Ct. 1495. In *Hutchison*, this Court found the defendant's trial counsel ineffective when trial counsel failed to further investigate any of the information revealed by their expert's

---

8. This Court recognizes the different weight that may be afforded to documentary evidence over testimony from family members. In *Black v. State*, this Court discussed *State v. Perry*, 879 S.W.2d 609, 613 (Mo.App.1994), which rejected an argument that testimony from a family member was equivalent to internal police department records relating to a central, converted fact in the case. 151 S.W.3d 49, 56 (Mo. banc 2004). Although this case involves testimony from Mr. McLaughlin's family regarding childhood abuse, the existence of childhood abuse was not challenged by the state such as to make the lack of records prejudicial.

report, "did not investigate Hutchison's medical, educational, family, and social history and did not present available evidence of Hutchison's emotional and intellectual impairment." *Hutchison*, 150 S.W.3d at 308. As a consequence, Mr. Hutchison was prejudiced by the failure of his trial counsel. *Id.* Lastly, in *Taylor*, this Court found ineffective assistance when the evidence presented by the defendant's trial counsel during the penalty phase solely consisted of the limited testimony of four experts during the guilty phase and one witness during the penalty phase. *Taylor*, 262 S.W.3d at 250.

*Williams, Hutchison*, and *Taylor* involved a complete failure by trial counsel to introduce important mitigating evidence. This case, on the other hand, involves a claim of ineffective evidence for the failure to introduce corroborating evidence. As a result, *Williams, Hutchison*, and *Taylor* are not applicable to this case. Because the school, hospital, and jail records are duplicative of evidence presented during the penalty phase of trial, and because whether Mr. McLaughlin had such a mental health history was not a central contested issue, Mr. McLaughlin was not prejudiced by his trial counsel's failure to introduce the records into evidence. The motion court did not clearly err in denying Mr. McLaughlin an evidentiary hearing on this claim.

 The motion court also did not clearly err in denying Mr. McLaughlin an evidentiary hearing on his claim that his trial counsel were ineffective for failing to object to the trial court's hearsay instruction regarding the records. During the trial, the defense's expert witnesses testified about the school, hospital, and jail records to support their conclusions. The trial court instructed the jury that the records could not be considered for the truth of the matter asserted but only as

support for the experts' conclusions. "If evidence is admissible for one purpose but improper for other purposes, it should be received, subject to limiting instruction, if requested." *State v. Jones*, 979 S.W.2d 171, 182 (Mo. banc 1998). Here, as discussed previously, Mr. McLaughlin's trial counsel did not seek to introduce the records, nor did they lay the adequate foundation to admit such records. The records were only admitted as a basis for the expert opinions, and a limiting instruction by the trial court was proper. The failure to make a non-meritorious objection is not ineffective assistance of counsel. *Zink*, 278 S.W.3d at 188.

### 7. The Penalty–Phase Closing Argument

Mr. McLaughlin claims that the motion court erred in denying an evidentiary hearing on his claim of ineffective assistance of counsel for failing to object to the prosecutor's closing argument during the penalty phase of trial. Mr. McLaughlin asserts that his right to a fair trial was violated when the prosecutor compared jurors to soldiers and implied that jurors had a duty to impose death, just as soldiers have duties in war they do not enjoy. He also asserts that his right to fair trial was violated when the prosecutor told the jurors to "send a message" to stop others from killing.

 The motion court denied Mr. McLaughlin's claim, finding that he failed to present a cognizable claim for Rule 29.15 relief and had not shown a substantial deprivation of his right to fair trial. Generally, the mere failure to object at trial or preserve an issue on appeal is not a cognizable ground for relief for ineffective assistance of counsel on a post-conviction motion. *Dickerson v. State*, 269 S.W.3d 889, 893 n. 3 (Mo. banc 2008); *Ervin v. State*, 80 S.W.3d 817, 822 (Mo. banc 2002).

To state a cognizable claim of ineffectiveness for failure to object or preserve an issue on appeal, Mr. McLaughlin must allege that the trial counsel's failure denied him a fair trial. *Dickerson,* 269 S.W.3d at 893 n. 3. Furthermore, while the propriety of the "soldier" argument was litigated on direct appeal,[9] it was under plain error review, a standard different from that applied to claims of ineffective assistance under *Strickland. See Deck v. State,* 68 S.W.3d 418, 427 (Mo. banc 2002). Because Mr. McLaughlin alleges that his right to a fair trial was violated and the issue was not fully litigated on direct appeal, he presents a cognizable claim.

During the state's rebuttal during closing arguments, the prosecutor stated to the jury:

> You know, sometimes when you come in, you have a duty. You've all seen this. You've all seen the soldiers in World War II. You know, they're now what? In their 70's and 80's, if they're still around.

> They went back in World War II, and they did their duty. The war wasn't something I'm sure they took pleasure in. They didn't want to do that. They didn't want to get taken away from their families and go over and fight the Germans or Nazis. That wasn't what they wanted to do; they had a duty to do it, and they did their duty. And just as you have a duty to do.

> When you talk to those men now, and you look at those men, you know what? They're able to stand up there tall, and they're proud. They're not proud because of what they had to do to those other young men, but they're proud because they're able to do their duty. They did what was right even though it was hard to do that.

So, ladies and gentlemen, you've heard all the evidence. You've heard both the aggravating and mitigating. It's up to you to decide. In doing that, if you're trying to think why should you do this, well, number one, the evidence is there for you to do it. And, number two, you know, you could send a message. Even if it only stops one other person from doing what he did, that's a message you want to send.

Mr. McLaughlin's trial counsel made no objection regarding these statements by the prosecutor. In support of his claim that his trial counsel were ineffective for failing to object, thereby depriving him of his right to a fair trial, Mr. McLaughlin cites *Viereck v. United States,* 318 U.S. 236, 63 S.Ct. 561, 87 L.Ed. 734 (1943); *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); and *Weaver v. Bowersox,* 438 F.3d 832 (8th Cir.2006). This Court distinguished *Weaver* on direct appeal, and it will not be addressed further. *State v. McLaughlin,* 265 S.W.3d 257, 275 (Mo. banc 2008). The closing arguments in *Viereck* and *Young* also are distinguishable from this case.

In *Viereck,* the defendant was charged with violating a federal law requiring the registration of foreign agents. 318 U.S. at 237–39, 63 S.Ct. 561. During closing argument, the prosecutor said:

> This is war, harsh, cruel, murderous war. There are those who, right at this very moment, are plotting your death and my death; plotting our death and the death of our families ... This is war. It is a fight to the death. The American people are relying upon you ladies and gentlemen for their protection against this sort of a crime, just as they are relying on the protection of the Men who man the guns in Bataan Peninsula,

---

9. *State v. McLaughlin,* 265 S.W.3d 257 (Mo. banc 2008).

and everywhere else. They are relying upon you ladies and gentlemen for their protection. We are at war. You have a duty to perform here.

*Id.* at 247 n. 3, 63 S.Ct. 561. In dicta, the United States Supreme Court found the prosecutor's closing argument improper because, with World War II ongoing, "passion and prejudice are heightened by emotions stirred by our participation in a great war, we do not doubt that these remarks addressed to the jury were highly prejudicial. . . ." *Id.* at 248, 63 S.Ct. 561.

In *Young,* defense counsel accused the prosecutor in closing arguments of unfairly presenting and deliberately poisoning the case, including that the defendant was the "only one in this whole affair that has acted with honor and with integrity." 470 U.S. at 4–5, 105 S.Ct. 1038. The prosecutor responded by saying "I think it's a fraud," and "I don't think you're doing your job as jurors in finding facts as opposed to the law [and if] you think that's honor and integrity then stand up here . . . and say that's honor and integrity; I don't believe it."[10] The United States Supreme Court found on plain error review that, while the statements of opposing counsel expressing their personal views had "no place in the administration of justice," it did not amount to plain error requiring reversal. *Id.* at 20, 105 S.Ct. 1038. Furthermore, the Court discussed with disfavor the prosecutor's statement for the jury to "do its job," but nonetheless concluded "that the jury was not influenced to stray from its responsibility to be fair and unbiased." *Id.* at 18, 105 S.Ct. 1038.

In this case, the closing argument by the prosecutor does not incite emotions and passions to the extent as in *Viereck* or involve an attempt to unduly influence the jury or inject counsel's personal beliefs as discussed in *Young.* In addition, unlike the prosecutor's statements in *Viereck,* which essentially tell the jury that it was its duty to impose punishment, the prosecutor in this case instead told the jury that it has a duty to reach a decision. As this Court stated on direct appeal, the prosecutor "told the jurors that like soldiers, they had a duty, but he then identified that duty as being to hear the evidence and decide on punishment, stating, '[s]o, ladies and gentlemen, you've heard all the evidence. You've heard both the aggravating and mitigating. It's up to you to decide.'" *McLaughlin,* 265 S.W.3d at 276. Mr. McLaughlin's trial counsel were not ineffective for failing to object to the "soldier" argument.

Mr. McLaughlin also argues that he was deprived of a fair trial by his trial counsel's failure to object to the prosecutor's "send a message" statement. This Court has held that "send a message" statements are permissible. In *State v. Smith,* the prosecutor told the jury that "If we're going to keep people form killing people . . . we must take action . . . People need to know. People need to know we will not stand for brutal, senseless murders with aggravating circumstances." 944 S.W.2d 901, 919 (Mo. banc 1997). This Court found that these statements, which "send a message of intolerance to the com-

---

**10.** The prosecutor stated:

> You can look at the evidence and you can remember the testimony, you remember what [the witnesses] said and what [respondent] admitted they said. I think it's a fraud.
>
> . . .

> I don't know whether you call it honor and integrity . . . I don't think you're doing your job as jurors in finding facts as opposed to the law that this Judge is going to instruct you, you think that's honor and integrity then stand up here . . . and say that's honor and integrity; I don't believe it.

*Id.* at 5–6, 105 S.Ct. 1038.

munity," are proper. *Id.; see also State v. Baumruk,* 280 S.W.3d 600, 618 (Mo. banc 2009) (reviewing a closing argument for plain error and finding that " 'send a message' arguments are permissible."). Counsel is not ineffective for failing to make non-meritorious objections. *Smith,* 944 S.W.2d at 918.

Mr. McLaughlin has failed to show that he was deprived of a fair trial due to his counsel's failure to object to the "soldier" or "send a message" arguments. The motion court did not clearly err in denying him an evidentiary hearing on this claim.

### 8. Death Penalty as Cruel and Unusual Punishment

Mr. McLaughlin claims that the motion court erred in denying an evidentiary hearing on his claim that Missouri's death penalty statute is unconstitutional as arbitrary and capricious in that it does not genuinely narrow the class of people eligible for the death penalty. He asserts that the statutory aggravator in section 565.032.2(7) is so broad as to apply to almost any murder, in that the construction of "deliberation" for first-degree murder as compared to "knowingly" for second-degree does not narrow the class eligible for the death penalty and that a person may be more likely to receive the death penalty depending on the geographical location of the prosecution. He cites in support a law review article, Katherine Barnes et al., *Place Matters (Most): An Empirical Study of Prosecutorial Decision–Making in Death–Eligible Cases,* 51 ARIZ. L.REV. 305 (2009).

The motion court denied Mr. McLaughlin's claim. After noting the arguments set forth by Ms. Barnes et al., the motion court found that the death penalty scheme in this state has been repeatedly been upheld against a variety of constitutional challenges. As a result, it cited binding precedent from this Court and denied relief to Mr. McLaughlin.

Post-conviction relief under Rule 29.15 is not a substitute for direct appeal or to obtain a second chance at appellate review. *Zink,* 278 S.W.3d at 176. Claims challenging the constitutionality of the death penalty are for direct appeal and are not cognizable on a motion for post-conviction relief. *See Jones,* 979 S.W.2d at 181. While appellate courts may hear alleged constitutional violations in exceptional circumstances, Mr. McLaughlin has not identified any reason for his failure to assert this claim on direct appeal. The motion court's decision to deny Mr. McLaughlin an evidentiary hearing was not clearly erroneous.

### IV. Conclusion

For the reasons set out above, the judgment is affirmed.

TEITELMAN, C.J., RUSSELL, FISCHER, STITH and PRICE, JJ., and PRITCHETT, Sp.J., concur.

DRAPER, J., not participating.