

# In the
# Missouri Court of Appeals
# Western District

BOBBY WRIGHT,

                **Appellant,**

v.

STATE OF MISSOURI,

                **Respondent.**

WD77287

OPINION FILED:

DECEMBER 23, 2014

---

**Appeal from the Circuit Court of Pettis County, Missouri
The Honorable Robert Lawrence Koffman, Judge**

**Before Division One: Thomas H. Newton, P.J., Lisa White Hardwick, Anthony Rex Gabbert, JJ.**

Bobby Wright appeals the denial of his Rule 24.035 motion for post-conviction relief. Wright raises two points on appeal. First, he contends that the circuit court clearly erred in denying his Rule 24.035 motion because he was denied due process of law and effective assistance of counsel because his defense attorney had discussions concerning employment with the Pettis County Prosecutor's Office and accepted a position as a Pettis County Assistant Prosecuting Attorney during the time Wright's criminal case was pending and prior to his sentencing, thereby creating a conflict of interest prejudicing Wright. Second, Wright contends that the circuit court clearly erred in overruling his Rule 24.035 motion because his constitutional right to be free from double jeopardy was violated when he was convicted and sentenced for both

manufacture of a controlled substance and possession with intent to deliver the same controlled substance under Section 195.211, RSMo Cum. Supp. 2014.  We affirm.

On April 5, 2011, Wright was charged in an information with one count of the class B felony of manufacture of a controlled substance based on the allegations that on or about December 1, 2010, Wright, acting together with others, manufactured more than five grams of marijuana, a controlled substance, by packaging it, knowing or consciously disregarding a substantial and unjustifiable risk that it was a controlled substance.  He was also charged with one count of the class B felony of possession of a controlled substance with intent to deliver based on the allegations that on or about December 1, 2010, with the intent to distribute, deliver and sell, Wright possessed more than five grams of marijuana, a controlled substance, knowing of its presence and illegal nature.

At Wright's plea hearing on November 10, 2011, the State's factual basis for the charges included that, on December 1, 2010, the Sedalia Police Department served a search warrant on Wright's home in Sedalia.  When they did, they found Wright in his kitchen at the kitchen table.  On the kitchen table officers found approximately 56 grams of loose marijuana and 41 small baggies of marijuana, each containing one to three grams.  After his arrest, Wright acknowledged that the marijuana was his marijuana, and that he had been packaging it into smaller packages with the assistance of others.  The State indicated that officers at the scene would testify that the amount of marijuana and the manner in which it was packaged indicated that it was possessed for the purpose of delivering or selling to other people.

On or about November 10, 2011, Wright pled guilty to both counts.  The State advised the court that, pursuant to a plea agreement, the State would not file prior or persistent drug offender allegations which could significantly increase the range of punishment in the case.  The

2

State asked the court to continue sentencing to January 17, 2012, per Wright's request, and indicated that the parties had agreed that on that date the State would recommend concurrent nine-year sentences. The State advised the court that, if Wright failed to appear in court as required, or if there was probable cause to believe he had committed any new offense, then he would be subject to the full range of punishment, up to 15 years on each count, and he would not be entitled to withdraw his guilty plea. The court ordered a sentencing assessment report and set sentencing for January 17, 2012. On January 17, 2012, the sentencing hearing was moved to February 1, 2012.

At the sentencing hearing on February 1, 2012, the State presented evidence that, on November 30, 2011, after Wright entered his plea on November 10, 2011, Wright was stopped for an alleged traffic violation and approximately nine individual baggies of marijuana were allegedly found in a compartment in the vehicle. An officer testified at the sentencing hearing that Wright asked the officer if he could cut him a break because he already had charges pending and was due to be sentenced in January for those charges.

The State argued at the sentencing hearing that, because Wright had violated the terms of the plea agreement, he be sentenced to concurrent 15-year terms. The State noted that Wright could be subject to two consecutive terms of 15 years, but the State was asking that the sentences run concurrent.

Wright's counsel disagreed with the State's recommendation. Wright's counsel argued that the original agreement of nine years was "still a pretty substantial result for a case like this." Wright's counsel argued "that the situation we have here with Mr. Wright entering his guilty plea, acknowledging his responsibility for it, and taking a substantial sentence with the two nine year concurrent terms is something more than reasonable for the court to feel like they have

3

resolved this case in a fair manner for both sides." Wright's counsel argued that, if the court was not inclined to follow the original recommendation, then the court should consider the sentences received by Wright's co-defendants to reach a just conclusion. Wright's counsel urged the court to consider a "middle ground" and to not assess the maximum sentence.

After hearing the evidence, the court concluded that there was probable cause to believe that Wright had committed a similar crime while awaiting sentencing. The court noted to Wright that, while Wright knew when he returned for sentencing that the court was going to concern itself with probable cause for other crimes, Wright told the probation and parole office, as indicated in Wright's Sentence Advisory Report, that he "used on weekends" and "typically use[d] an ounce or more with friends." When the court asked Wright if he had been doing that since his plea, he first stated, "No," and then stated, "Well, I've been working on it." The court discussed with Wright that he considered Wright more culpable than his co-defendant, Freddie Thomas, who had already been tried and sentenced to ten years in the matter. The court stated:

> You know, I looked at this, and my court reporter refreshed my memory about Freddie Thomas's sentence and what I said to him . . . my findings in that hearing, that you were the primary culprit in this based on the trial I had and the understanding of the facts, and then you came in here and pled, but you had a nine-year sentence.
>
> And I recall at Freddie Thomas's hearing I did not want to give Freddie Thomas more time than I gave the person that I found to be more culpable in the very crime. I was troubled by that. Now, then, I get this probable cause to indicate you're doing exactly the same thing that you were accused of and what you pled to. . . .
>
> Therefore, the nine-year sentence that was agreed to on November the 10th, 2011, is no longer going to be accepted by me. I'm going to accept the State's recommendation now of 15 years in the Missouri Department of Corrections. Now, I will tell you, sir, I've never done that before. . . .

4

Now, I have taken into consideration the Sentence Advisory Report. It's very damning to you. The things you said, the things you've done, are damning to you. . . .

On April 3, 2012, Wright filed a *pro se* motion for post-conviction relief pursuant to Rule 24.035. Appointed counsel filed an amended motion on June 27, 2012. Neither of those motions alleged that plea counsel had a conflict of interest that affected his representation of Wright. On February 14, 2013, Wright's hired counsel filed a motion to disqualify the Pettis County Prosecutor's Office from the post-conviction proceedings due to Wright's plea attorney now working for that office. The Prosecuting Attorney for Pettis County agreed that, while it would be possible to eliminate any possible conflict of interest by insulating the attorney from any involvement in the case, to avoid an appearance of impropriety the court should appoint a substitute prosecutor. Thereafter, the court appointed a substitute prosecutor.

In Wright's evidentiary hearing on his Rule 24.035 motion, Wright's plea counsel, Phillip Sawyer, testified that he started working for the Pettis County Prosecutor's Office on either April 15 or May 1 of 2012. He testified that the job was officially offered to him approximately 30 to 60 days prior to his start date, and that he recalled that he might have been aware that the job was a real possibility for him around late January to mid February of 2012. Wright's counsel at the evidentiary hearing asked Sawyer if, because he began to consider going to work for the prosecutor in late January and Wright's sentencing hearing was February 1 of the same year, if that created "at least the appearance of a potential conflict of interest." Sawyer responded:

> It might create the appearance of it. I guess I would – I would follow with telling you that I'm trying to recall dates in my head. And I would suggest to you that I don't have any specific recollection of knowing that I was coming to the prosecutor's office at the time, just for purposes of saying it.

5

Wright's attorney at the evidentiary hearing then argued that Wright was ineffectively represented because of "at least the appearance of a conflict of interest." The court responded that the court "didn't see that in the motion, but it's been tried here by consent, because nobody objected to it, so I'm okay with that." The court denied Wright's Rule 24.035 motion for post-conviction relief.

In Wright's first point on appeal, he argues that the circuit court clearly erred in denying his Rule 24.035 motion because he was denied due process of law and effective assistance of counsel because his defense attorney had discussions concerning employment with the Pettis County Prosecutor's Office and accepted a position as a Pettis County Assistant Prosecuting Attorney during the time Wright's criminal case was pending and prior to his sentencing, thereby creating a conflict of interest prejudicing Wright because it was likely difficult for defense counsel to give detached advice or advocate zealously and/or argue forcefully on behalf of Wright during sentencing and Wright received two maximum sentences.

Upon review of the record, we find that Wright waived this claim on appeal by failing to assert this claim in his Rule 24.035 motion. In actions pursuant to Rule 29.15 or Rule 24.035, any claims not raised in the Rule 29.15 or Rule 24.035 motions are waived on appeal. *McLaughlin v. State*, 378 S.W.3d 328, 340 (Mo. banc 2012). "'Pleading defects cannot be remedied by the presentation of evidence and refinement of a claim on appeal.'" *Id.* (*quoting Johnson v. State*, 333 S.W.3d 459, 471 (Mo. banc 2011). In Wright's *pro se* Rule 24.035 motion for post-conviction relief that was incorporated into his amended motion, he alleged only that his plea counsel was ineffective for: "Misleading of legal counsel," "falsified statements from legal counsel," "ignored harassment of police officers," "counsel confirming me that plea was stable and unchangeable," "presentence evaluation not discussed," and "lawyer only presented guilty

6

plea as best defense." Although plea counsel had already commenced employment with the prosecutor's office when Wright filed his *pro se* motion and appointed counsel filed an amended motion, nowhere in his Rule 24.035 motion did Wright allege that his plea counsel had a conflict of interest or that there was an appearance of impropriety. Although the trial court considered the claim by noting that no one had objected to the argument at the evidentiary hearing and, therefore, considered it tried by consent, "[i]t is the court's duty to enforce the mandatory time limits and the resulting complete waiver in the post-conviction rules – even if the state does not raise the issue." *Dorris v. State*, 360 S.W.3d 260, 268 (Mo. banc 2012). By the time Wright raised the issue, it was time barred and could not have been revived by the court. Point denied.

In Wright's second point on appeal, he contends that the circuit court clearly erred in overruling his Rule 24.035 motion because his constitutional right to be free from double jeopardy was violated when he was convicted and sentenced for both manufacture of a controlled substance and possession with intent to deliver the same controlled substance under Section 195.211.

Our review of the denial of a Rule 24.035 motion is limited to determining whether the circuit court's findings of fact and conclusions of law are clearly erroneous. *Garris v. State*, 389 S.W.3d 648, 650 (Mo. banc 2012). The court's findings and conclusions are clearly erroneous if, after review of the record, we are left with a definite and firm impression that a mistake has been made. *Id.* We will affirm on any ground that supports the circuit court's judgment, regardless of the grounds on which the circuit court relied. *Stanley v. State*, 420 S.W.3d 532, 543 n9 (Mo. banc 2014).

"The general rule in Missouri is that a plea of guilty voluntarily and understandably made waives all non-jurisdictional defects and defenses." *Hagan v. State*, 836 S.W.2d 459, 461 (Mo.

banc 1992) (internal quotations and citations omitted), *overruled on other grounds by State v. Heslop*, 842 S.W.2d 72, 75 (Mo. banc 1992). "An exception to this general rule of waiver, however, exists where it can be determined *on the face of the record* that the court had no power to enter the conviction or impose the sentence." *Id.* Consequently, "a guilty plea does not waive a subsequent claim of a double jeopardy violation if it can be determined from the face of the record that the sentencing court had no power to enter the conviction or impose the sentence." *Id.* In reviewing such double jeopardy claims, we review the State's information or indictment and the transcript of a movant's guilty plea. *Id.*

Wright contends that there was no separate factual basis for charging him with both manufacture of a controlled substance and possession of a controlled substance with intent to deliver. He contends that "[i]t was not possible for [him] to have been 'manufacturing' marijuana by packaging it without also possessing it at the same time." This argument is not novel. It has heretofore been rejected in *State v. Kitchen*, 950 S.W.2d 284 (Mo. App. 1997), *State v. McIntire*, 813 S.W.2d 97 (Mo. App. 1991), and *State v. Brown*, 750 S.W.2d 139 (Mo. App. 1988), among others.

> In *State v. Brown*, 750 S.W.2d 139, 142 (Mo. App. E.D. 1988), the appellant argued that convictions for both possession and manufacture of marijuana constituted double jeopardy. In its analysis the court focused on the elements of the offenses charged. *Brown* held that '[t]o convict a defendant for possession, the state must prove that he had knowledge of the presence and nature of the substance. The mental state pertains only to having the controlled substance under one's dominion or control, or having access to it.' *Id.* (citations omitted). On the other hand, '[t]o convict a defendant of manufacturing, the state had the burden of showing the planting, cultivating, growing, or harvesting of marijuana.' *Id. Brown* found that the appellant's claim lacked merit because the respective offenses contain different elements. *Id. Brown* concluded that "possession' and 'manufacture' of marijuana are distinct and separate offenses.' *Id.*

*State v. Norman*, 178 S.W.3d 556, 563 (Mo. App. 2005).

8

Pursuant to Section 195.010(23), RSMo Cum. Supp. 2010, the definition for "manufacture" "includes any packaging or repackaging of the substance." Count I in the Information filed against Wright charged him with manufacturing more than 5 grams of marijuana "by packaging it." Count 2 in the Information filed against Wright charged him with possessing more than 5 grams of marijuana, with the intent to distribute. During the plea hearing the State stated, as a part of the factual basis for the two charges, that officers found 56 grams of loose marijuana and 41 small baggies of marijuana on the kitchen table in Wright's home. Wright admitted that the marijuana belonged to him. Wright admitted that he had been packaging it into smaller packages with the assistance of others. The State indicated that officers would testify that the amount of marijuana and the manner in which it was packaged indicated that it was possessed for the purpose of delivering or selling to other people.

Wright argues that he was subjected to double jeopardy because both counts against him arise from the same evidence. Yet, "[t]he applicable test, to determine whether several charges are identical, is whether each offense necessitates proof of a fact which the other does not; the fact that there is some overlapping evidence that supports the convictions for both offenses does not violate the prohibition against double jeopardy." *Brown*, 750 S.W.2d 139, 142 (Mo. App. 1988). Here, in support of his double jeopardy argument, Wright solely cites *State v. Polson*, 145 S.W.3d 881 (Mo. App. 2004), which found that the prohibition against double jeopardy was violated when Polson was convicted of both possession of a methamphetamine precursor drug (pseudoephedrine) with intent to manufacture methamphetamine and possession of a chemical (pseudoephedrine) with intent to create a controlled substance, namely methamphetamine. Wright fails to cite, discuss, or attempt to distinguish the aforementioned precedent which concluded that possession of marijuana and manufacture of marijuana contains different

9

elements.  Here, Wright was charged with possession of marijuana with intent to distribute, which contains the intent to distribute element in addition to the elements required to prove possession.  Wright fails to articulate how the face of the record demands the conclusion that the circuit court had no power to enter the conviction.  Point two is denied.

We conclude, therefore, that Wright failed to preserve for our review his conflict of interest claim.  Further, the circuit court did not clearly err in denying Wright's claim of double jeopardy as possession of marijuana with the intent to distribute and manufacturing marijuana contain different elements.  We affirm the circuit court's judgment.

_____

Anthony Rex Gabbert, Judge

All concur.

10