

# In the
# Missouri Court of Appeals
## Western District

**RAY JOHNSON,**
            **Appellant,**

                                                    **WD85293**
                                                    **OPINION FILED:**
                                                    **August 8, 2023**

**v.**

**STATE OF MISSOURI,**
            **Respondent.**

### Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Patrick William Campbell, Judge

Before Division Four:  Gary D. Witt, Chief Judge, Presiding, Lisa White Hardwick, Judge, W. Douglas Thomson, Judge

Ray Johnson ("Johnson") appeals the judgment of the Circuit Court of Jackson County, Missouri ("motion court"), denying, after an evidentiary hearing, his motion for post-conviction relief pursuant to Rule 29.15.[1]  Johnson argues that the motion court erred in (1) denying Johnson's claim that his trial counsel ("Trial Counsel") was ineffective for failing to object to a portion of the State's closing argument at trial; and (2) denying

---

[1] All rule references are to Missouri Supreme Court Rules (2023), unless otherwise indicated.

Johnson's claim that Trial Counsel was ineffective for failing to call a fact witness. Finding

no error, we affirm.

## Factual and Procedural Background[2]

Johnson shot and killed Victim. On the evening of April 23, 2016, Victim and

Johnson were both inside Bobs-N-Motion bar ("Bob's"). The shooting occurred just

outside the bar. Portions of the events of the evening inside Bob's were captured on the

bar's video recording system. Johnson was inside Bob's with a group of other men. After

some time, Victim exited the building. Upon noticing this, Johnson tapped one of the men

he was with on the shoulder and Johnson, the man whom Johnson tapped on the shoulder,

and another man in the group followed Victim outside.

Once outside of Bob's, Victim and Johnson became involved in a physical

altercation. The State presented the testimony of Eye Witness to these events. Eye Witness

testified that he saw a fight occur outside of Bob's while riding as a passenger in a vehicle

that was driving past the building. He stated that the men were already fighting when the

car he was riding in drove past. The window on the vehicle was rolled down. In observing

this encounter, Eye Witness heard one of the men say "get off me" and then saw Johnson

raise a gun, point it at Victim, and shoot him. Eye Witness saw Victim fall to the ground,

at which point Eye Witness testified that Johnson proceeded to stand over him and shoot

him three to four more times. He testified that the man with the pistol was wearing a white

t-shirt with blue and red stripes, matching Johnson's appearance as shown in surveillance

---

[2] "On appeal from the motion court's ruling on a Rule 29.15 motion, we view the evidence in the light most favorable to the verdict in the underlying criminal case." *Hutton v. State*, 345 S.W.3d 373, 374 Fn.1 (Mo. App. W.D. 2011) (citation omitted).

footage from inside Bob's. After seeing Johnson shoot Victim, Eye Witness testified that he saw Johnson run south. Surveillance video footage from a neighboring building confirmed Eye Witness's account of an altercation between Victim and Johnson. This footage also showed the two men, who followed Johnson outside the bar, leaving the scene but did not show them involved in the altercation.

Police arrived at the scene of the shooting where they found Victim still breathing but bleeding profusely. At the scene, police also found a broken pair of eyeglasses on the ground, which later DNA testing established Johnson to be a "source of the major genetic information" and which matched the appearance of the glasses worn by Johnson as captured in video footage from inside Bob's. Four days after the shooting occurred, police detained Johnson, who had a black eye and was wearing a new pair of eyeglasses.

Johnson was charged with first-degree murder and armed criminal action. At trial, the State made the following argument to the jury:

> Now, you're going to notice there are these things we call lesser included offenses for Count I. These are not separate charges. We have charged the defendant with murder in the first degree. So you are only going to get to these if you find that he is *not guilty of murder first degree.*
>
> So the way this works is, you find him guilty of murder in the first degree, which I anticipate you will for the reasons we've already discussed. You don't even look at these and you move on to Count II. You don't have to even look at these instructions if you've done that. (emphasis added).

The jury found Johnson guilty on Count I of murder in the first degree, and the trial court sentenced Johnson to a sentence of life imprisonment without the possibility of parole for the murder charge and a consecutive 10-year sentence on Count II for the charge of armed criminal action. On direct appeal, this court affirmed Johnson's conviction in *State*

*v. Johnson*, 599 S.W.3d 222 (Mo. App. W.D. 2020). Johnson then timely filed his *pro se* motion for post-conviction relief pursuant to Rule 29.15, following which appointed counsel timely filed an amended motion. As relevant to this appeal, Johnson alleged that his Trial Counsel was ineffective in failing to object to the above quoted language from the State's closing argument and that Trial Counsel was ineffective for failing to call a woman who was walking her dog ("Dog Walker") nearby the scene of the crime as a fact witness during trial. The motion court held an evidentiary hearing on the amended motion.

Dog Walker was not called as a fact witness at Johnson's trial, although Trial Counsel was aware of Dog Walker through the discovery, as she had been interviewed by the police during the investigation. Dog Walker stated that she was walking her dog near Bob's when she heard what sounded like fireworks and saw two men not matching the description of Johnson shouting and motioning toward the bar before leaving the area in a vehicle. Trial Counsel testified at the evidentiary hearing that she had received a copy of Dog Walker's videotaped statement to police, along with a corresponding transcript. Trial Counsel also testified that she asked her investigator to locate and interview Dog Walker, and that based on that conversation and conversations with Johnson, she chose not to call Dog Walker as a witness. The motion court then issued Findings of Fact and Conclusions of Law, as well as a Judgment and Order denying relief. This appeal follows.

**Standard of Review**

"When reviewing a motion court's denial of a claim of ineffective assistance of counsel, the reviewing court is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." *Lindsey v. State*, 633 S.W.3d 547, 551

4

(Mo. App. W.D. 2021) (quoting *Hays v. State*, 360 S.W.3d 304, 309 (Mo. App. W.D. 2012)); Rule 29.15(k); *Davis v. State*, 653 S.W.3d 169, 171 (Mo. App. S.D. 2022). "A judgment is clearly erroneous when, in light of the entire record, the court is left with a definite and firm impression that a mistake has been made." *Hollings v. State*, 662 S.W.3d 821, 828 (Mo. App. E.D. 2023); *Beck v. State*, 637 S.W.3d 545, 551 (Mo. App. W.D. 2021) (citing *Watson v. State*, 520 S.W.3d 423, 428 (Mo. banc 2017)). "The motion court's findings of fact and conclusions of law are presumed to be correct." *Beck*, 637 S.W.3d at 551.

## Analysis

Both points on appeal argue that the motion court erred in denying Johnson's claim of ineffective assistance of counsel.

> To establish ineffective assistance of counsel, a movant must prove "by a preponderance of the evidence that (1) trial counsel failed to exercise the level of skill and diligence that reasonably competent counsel would exercise in a similar situation and (2) the movant was prejudiced by that failure." *Dorsey v. State*, 448 S.W.3d 276, 286-87 (Mo. banc 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). If a movant fails to satisfy either prong of the *Strickland* test, he or she is not entitled to post-conviction relief. *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. banc 1997).

> To satisfy the performance prong, movants "must overcome the strong presumption that counsel's conduct was reasonable and effective." *Johnson v. State*, 406 S.W.3d 892, 899 (Mo. banc 2013). This presumption is overcome when a movant identifies "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Id.* (internal quotation omitted).

> To establish *Strickland* prejudice, "a movant must show a reasonable probability that, but for counsel's errors, the outcome would have been different." *Dorsey*, 448 S.W.3d at 287. "A reasonable probability exists when

5

there is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation omitted).

*Beck*, 637 S.W.3d at 551–52.

### *Point I; Failure to Object to Closing Argument*

Johnson's first point on appeal argues that the motion court erred in denying his claim that Trial Counsel was ineffective for failing to object to the State's closing argument. The jury was instructed on the charge of first-degree murder and multiple lesser included offenses. In its closing argument, the State argued that the jurors needed only consider the lesser-included offense instructions if they found Johnson not guilty of murder in the first degree.

Ineffective assistance of counsel is not established when counsel chooses to pursue one reasonable trial strategy in favor of another. *Hosier v. State*, 593 S.W.3d 75, 81 (Mo. banc 2019). Counsel's choices and conduct are viewed through an objective lens. *Strickland*, 466 U.S. at 688. Further, counsel's decisions are presumed to be strategic. *McLaughlin v. State*, 378 S.W.3d 328, 343 (Mo. banc 2012). Reasonable trial strategy decisions cannot be a basis for post-conviction relief, regardless of whether they were ineffective in hindsight. *Whitt v. State*, 366 S.W.3d 669, 674 (Mo. App. E.D. 2012). The decision to pursue an all-or-nothing defense strategy has repeatedly been deemed reasonable trial strategy. *Jones v. State*, 514 S.W.3d 72, 81-82 (Mo. App. E.D. 2017). As long as the strategic choice is made after a thorough investigation of the facts and the law, the decision is "virtually unchallengeable." *McLaughlin*, 378 S.W.3d at 350.

6

Johnson argues that Trial Counsel's failure to object to the State's closing argument fell below objective standards of reasonable competence, resulting in prejudice. Specifically, Johnson cites as support for his argument that, on direct appeal, this Court held the prosecutor's acquittal-first argument to be improper. *Johnson*, 599 S.W.3d at 226, 229. Johnson asserts that Trial Counsel's choice to submit the lesser-included offense instruction of second-degree murder for consideration by the jury because of the mandatory life without parole sentence attached to a murder first degree conviction establishes Trial Counsel's failure to object was not strategic. Trial Counsel initially testified at the post-conviction evidentiary hearing that her failure to object to the improper acquittal-first argument was a result of her not hearing the content of the argument correctly or at all. However, after having the opportunity to read the record, Trial Counsel stated that she would not have objected to the argument even if she heard it because it did not seem to be improper. While Johnson argues that Trial Counsel's initial testimony shows her failure to object was not strategic and therefore below the standard of care of a reasonably competent attorney, Trial Counsel's testimony immediately thereafter indicated that she would have strategically chosen not to object even if she had heard the argument. On this issue, the motion court found in accordance with the opinion of this Court, which held on direct appeal that Trial Counsel's omission aligned with the defense's trial strategy and was not ultimately prejudicial. Further, Trial Counsel testified at the evidentiary hearing that a total not-guilty defense was the defense strategy and that Johnson expressly rejected Trial Counsel's suggestion to pursue a strategy of arguing for a conviction on the lesser included offense of voluntary manslaughter because Johnson wanted only to pursue an all-

7

or-nothing not guilty defense. Trial Counsel's failure to object, therefore, did not fall outside the wide range of professional competent assistance because it was a matter of reasonable trial strategy and, as such, does not constitute error.

Even if Trial Counsel's failure to object had been unreasonable, a defendant still has to establish that the error had a prejudicial effect on the defense and the outcome of the trial. *Strickland*, 466 U.S. at 693. Here, Johnson did not present sufficient evidence to establish that the result would have been different had Trial Counsel objected. While the motion court accurately noted that the acquittal-first argument was improper, it found this improper argument to be insufficient to establish clear error since even though the State made an improper argument, the jury instructions properly instructed the jury on the lesser included offenses and informed the jury that the arguments of the attorneys were not evidence and the jury instructions contained the law the jury should apply to this case. As such, the jury had been properly instructed about possible lesser charges when determining the verdict and still chose to convict of the higher offense. Therefore, the motion court's judgment finding Trial Counsel's failure to object not to constitute ineffective assistance of counsel was not erroneous.

Point I is denied.

### Point II; Failure to Call a Fact Witness

Johnson's second point on appeal argues that the motion court erred in denying Johnson's claim that Trial Counsel was ineffective for failing to investigate, interview, and call Dog Walker as a fact witness at trial. Johnson ultimately asserts that he was prejudiced

8

by Trial Counsel's omission and that but for the omission, there was a reasonable probability of a different outcome at trial.

Selection of witnesses is a component of trial strategy and is virtually unchallengeable in a claim of ineffective assistance of counsel. *Beck*, 637 S.W.3d at 552.

> To prove ineffective assistance for failure to call a witness, the defendant must show that: '(1) trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have produced a viable defense'.

*Shockley v. State*, 579 S.W.3d 881, 906 (Mo. banc 2019) (quoting *Glass v. State*, 227 S.W.3d 463, 468 (Mo. banc 2007). Here, Johnson argues that Dog Walker's testimony could have supported the defense that another person might have committed the shooting. Dog Walker gave a videotaped statement to police and testified at the evidentiary hearing that she would have cooperated with anyone who contacted her about the case. If called, Dog Walker could have testified that, while walking her dog, she heard loud "pop" noises, which she later found out were gunshots; that she saw a man lying on the ground in front of the bar; that she saw two men in the road shouting and motioning toward the bar but did not hear what they were saying; that one of the men was wearing a plaid shirt and the other a white shirt (matching the clothing of Johnson's associates seen in surveillance footage from inside Bob's); and that she saw these men leave the scene in a vehicle.

The evidentiary hearing established that Trial Counsel knew of and could have located Dog Walker through reasonable investigation, and that Dog Walker would have testified had she been called. However, Johnson's assertion that Dog Walker's testimony could have provided a viable defense by introducing reasonable doubt was not established

9

by this record. Failure to call a witness only rises to the level of ineffective counsel if that witness's testimony "unqualifiedly support[s]" the movant. *Hosier*, 593 S.W.3d at 88. Trial Counsel's rationale in not calling Dog Walker, as she testified to in the evidentiary hearing, was rooted in the belief that Dog Walker's testimony would be insufficient to unqualifiedly support Johnson's defense. Trial Counsel testified that she intentionally and strategically chose not to call Dog Walker because Dog Walker's testimony about seeing the two men yelling and taunting in front of the bar would not have been helpful to Johnson in that both men were seen with the defendant inside the bar immediately prior to the altercation, which could have shown consciousness of guilt or that they were acting in concert with Johnson. (Ev. Tr. 42-43). Dog Walker's testimony, then, was strategically determined not to be helpful and, in fact, to be potentially damaging to the defense. While it is not certain that Dog Walker's testimony would have been prejudicial to the defense, it clearly would not have provided unqualified support that Johnson did not commit the crime of which he was convicted. Rather, it would have offered only evidence that Johnson's associates were present at the scene of the shooting. The motion court's judgment finding that Trial Counsel's failure to call Dog Walker as a witness did not constitute ineffective assistance of counsel was not clearly erroneous.

Point II denied.

## Conclusion

The judgment of the motion court is affirmed.

_____
Gary D. Witt, Judge

All concur