

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| VICENTE ROLDAN-MARRON, | ) | |
| | ) | |
| Appellant, | ) | **WD85510** |
| | ) | |
| v. | ) | **OPINION FILED:** |
| | ) | **October 31, 2023** |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Kenneth Garrett, Judge

Before Division Three:  Lisa White Hardwick, Presiding Judge, Karen King Mitchell,
Judge and Cynthia L. Martin, Judge

Vicente Roldan-Marron ("Roldan-Marron") appeals from a judgment denying his

Rule 29.15[1] motion for post-conviction relief following an evidentiary hearing.  Roldan-

Marron asserts that the trial court committed clear error in denying his claim that he

received ineffective assistance of counsel as a result of his trial counsel's failure to

---

[1]All rule references are to Missouri Supreme Court Rules (2020), unless otherwise
indicated.

investigate and retain a forensic psychologist to evaluate his mental state at the time of his offenses. Finding no preserved claim of error, we affirm.

## Factual and Procedural Background

The State charged Roldan-Marron with one count of murder in the first degree and one count of armed criminal action in connection with the January 30, 2017 death of Y.G. The evidence presented at trial established that Roldan-Marron and Y.G. were married. The couple had three elementary school aged children at the time of Y.G.'s death.

In 2016, Y.G. became romantically involved with C.G.M., a married man who she met through her church's band. Roldan-Marron found out about Y.G.'s relationship with C.G.M. and then reached out to the church's pastor for help. The church's pastor advised Roldan-Marron to work on saving his marriage with Y.G., and separately advised C.G.M. to find another church to attend.

On January 29, 2017, C.G.M. attended a festival at the church. Sensing the tension, the church's pastor arranged for C.G.M. and his wife, Y.G. and Roldan-Marron, Y.G.'s father, and other church elders to meet in a small room in the church to discuss the situation. C.G.M. stormed out of the meeting as Y.G. was walking into the room. C.G.M. told Y.G. not to go into the meeting. Y.G. nevertheless attended the meeting, as did Roldan-Marron.

Following the meeting, Y.G. and Roldan-Marron argued in the church parking lot. Y.G. sped away from the parking lot in one of the couple's cars, and Roldan-Marron drove their three children to the family's home in Independence, Missouri. Y.G. called C.G.M. after she left the church, and they agreed to meet at a Walmart. Y.G. and C.G.M.

2

spoke for a few hours before Y.G. left to go home at approximately 10:30 p.m. Based on their conversation, C.G.M. was under the impression that Y.G. was "done" with Roldan-Marron.

After Y.G. arrived home, she and Roldan-Marron argued. Yelling progressed to pushing one another. The couple's oldest son ("oldest son"), a fourth grader at the time, took his brother ("youngest son") and sister ("daughter") to the basement to hide. At some point, the oldest son went to the first floor of the home to see what was happening. The oldest son was hiding behind a couch when he saw Roldan-Marron walk down the stairs to the first floor, grab a knife from the kitchen, and then walk back upstairs to the second floor while holding the knife. At a later point, the oldest son went up to the second floor, where he saw Y.G. lying dead on the floor. The oldest son went back down to the basement, where he and the youngest son took turns sleeping to protect their sister.

The next morning, the oldest son got himself and his siblings ready for school. Roldan-Marron drove the children to school and then returned home. Both the oldest son and the daughter, then a kindergartener, told their respective teachers that Y.G. was dead. The oldest son informed his teacher that Roldan-Marron killed Y.G. and explained that he knew she was dead because she did not wake up when he "jiggle[d] her" and there was blood. School personnel requested that the Independence Police Department perform a welfare check at the family's home.

Two officers, Officer D.B. and Officer D.W., were dispatched to the family's home. Upon arrival, the property manager was waiting outside the family's home with a key to the front door. Officer D.W. went around to the back of the home and checked the

back door. It was open. Officer D.B. used the key and opened the front door. When Officer D.B. saw blood "all over the floor," he called for additional officers to respond to the scene. Another officer arrived, and the officers used a loud, clear voice to indicate their presence and to ask anyone inside to come out of the house. No one responded. The officers then entered the home, continuing to announce their presence, and walked up the stairs to the second floor. There, the officers saw that the master bedroom door was open. A naked woman was lying face down on the bed, and a naked man was on top of the woman, engaged in apparent sexual activity. The naked man was Roldan-Marron, and the naked woman was Y.G. The officers took Roldan-Marron into custody.

Y.G. had suffered multiple stab wounds to the torso and was dead. In addition, her body had been mutilated in that her breasts had been cut off. An investigation of the home led to the discovery of several bloody knives throughout the home, and one of Y.G.'s breasts. An autopsy of Y.G.'s body revealed that she died as a result of stab wounds to her heart, lungs, and liver, and that Y.G.'s breasts were removed "at the time or just around the time of death."

Following a four-day trial, the jury found Roldan-Marron guilty of murder in the first degree and armed criminal action. The jury recommended that the trial court sentence Roldan-Marron to life imprisonment without the possibility of parole for murder, and life imprisonment for armed criminal action. The trial court entered a judgment of conviction that accepted the jury's sentencing recommendations, and ordered the sentences to run concurrently. Roldan-Marron appealed. We affirmed the trial

4

court's judgment in a *per curiam* order. *See State v. Roldan-Marron*, 599 S.W.3d 922 (Mo. App. W.D. 2020).

Roldan-Marron filed a timely *pro se* motion for post-conviction relief pursuant to Rule 29.15. Following the motion court's appointment of counsel, Roldan-Marron filed a timely amended motion for post-conviction relief pursuant to Rule 29.15(g). The amended motion claimed that Roldan-Marron received ineffective assistance of counsel because the two attorneys who represented him at trial failed to investigate Roldan-Marron's mental health.[2] Specifically, the amended motion asserted that trial counsel should have retained a forensic psychologist or psychiatrist to investigate whether Roldan-Marron had the ability to deliberate as to support a conviction of murder in the first degree, and that had his attorneys retained such an expert and presented such evidence, there is a reasonable probability that the jury would have convicted Roldan-Marron of a lesser-included offense. The amended motion alleged that at the time of the crime, Roldan-Marron suffered from "untreated bipolar disorder" that improved "significantly" when Roldan-Marron received treatment during his pre-trial detention, and that a retained forensic psychologist or psychiatrist would have discovered that condition. The amended motion further asserted that instead of retaining a forensic psychologist or psychiatrist, trial counsel relied on a "social worker" to "interview [Roldan-Marron], take a social history, and prepare mitigating evidence."

---

[2]Because Roldan-Marron's appeal does not implicate the other claims for relief asserted in the amended motion, our discussion of the amended motion has omitted discussion of those claims.

The motion court held an evidentiary hearing. The two attorneys who represented Roldan-Marron at trial (collectively "trial counsel") and a forensic psychologist who evaluated Roldan-Marron in January 2022 testified. Attorney D.H. assisted at trial, and testified that he began representing Roldan-Marron less than a month before trial. D.H. did not recall any discussions with Roldan-Marron's primary attorney, L.O., about investigating Roldan-Marron's mental state at the time of the crimes or about raising a diminished capacity defense.

Attorney L.O. testified that, in investigating the case, she reviewed memoranda created by Dr. C.D., a licensed psychologist affiliated with a group under contract with the Missouri State Public Defender's office. According to L.O., Dr. C.D. served as a "mitigation specialist" in connection with sentencing. L.O. explained that she did not consider retaining an expert witness to investigate or testify about Roldan-Marron's capacity to deliberate at the time he murdered Y.G. because "[t]he evidence was that he was intoxicated at the time of the offenses and that it was a voluntary intoxication situation." L.O. believed that, while Roldan-Marron's voluntary intoxication did not preclude a diminished capacity defense, based on her thirty years of experience as a trial attorney, the best trial strategy was to argue that Roldan-Marron acted out of "sudden passion."

Dr. C.R., a forensic psychologist, testified at the evidentiary hearing about his January 2022 evaluation of Roldan-Marron, which consisted of his clinical interview of

Roldan-Marron, and his review of Dr. C.D.'s psychological report,[3] deposition transcripts, detective interview transcripts, medical records, records from the Jackson County Detention Center, and trial transcripts. Dr. C.R. opined that, at the time of the crimes, Roldan-Marron suffered from a mental disease or defect, namely adjustment disorder with mixed anxiety and depression. According to Dr. C.R., "[Roldan-Marron's] condition *could* have affected his ability to deliberate," but Dr. C.R. "[could not] say [Roldan-Marron's condition] precluded [his ability to deliberate]." (Emphasis added.) Dr. C.R.'s report, which was entered into evidence, further explained that "[d]ue to [Roldan-Marron's] reported memory deficits secondary to alcohol intoxication, a more certain opinion cannot be provided."

The trial court entered its judgment ("Judgment") denying the amended motion on May 29, 2022. The Judgment concluded that "there was no evidence that trial counsel failed to investigate the case" because based on her investigation of the case, L.O. developed a "strategic trial strategy choice" to argue that Roldan-Marron acted out of sudden passion.

Roldan-Marron appeals.

## Standard of Review

"Appellate review of the [motion] court's action on [a] motion filed under . . . Rule 29.15 shall be limited to a determination of whether the findings and conclusions of the [motion] court are clearly erroneous." Rule 29.15(k). "A judgment is clearly erroneous

---

[3]Dr. C.R. characterized Dr. C.D. as a "forensic psychologist and mitigation expert" when he testified at the evidentiary hearing.

7

when, in light of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Nguyen v. State*, 670 S.W.3d 256, 260 (Mo. App. W.D. 2023) (quoting *Stark v. State*, 644 S.W.3d 583, 587 (Mo. App. W.D. 2022)).

## Analysis

Roldan-Marron presents a single point on appeal in which he asserts that the trial court committed clear error in denying the amended motion because the evidence established that he received ineffective assistance of counsel as a result of trial counsel's failure to investigate and retain a forensic psychologist to evaluate Roldan-Marron's mental state at the time of the crimes. Roldan-Marron argues that, had such an evaluation been undertaken, the forensic psychologist would have testified that Roldan-Marron suffered from adjustment disorder with mixed anxiety and depression at the time of the crimes that could have affected his capacity to deliberate. Roldan-Marron claims that, had such evidence been presented to the jury, there is a reasonable probability that the outcome of the trial would have been different.

As a preliminary matter, the State argues that Roldan-Marron's claim on appeal cannot be reviewed and has been waived because the claim of ineffective assistance of counsel on appeal does not align with the claim of ineffective assistance of counsel asserted in the amended motion. Rule 29.15(d) provides:

> The motion to vacate shall include every claim known to the movant for vacating, setting aside or correcting the judgment or sentence. The movant shall declare in the motion that the movant has listed all claims for relief known to the movant and acknowledging the movant's understanding that the movant waives any claim for relief known to the movant that is not listed in the motion.

8

Thus, a claim not set forth in a Rule 29.15 motion may not be raised for the first time on appeal. *Mallow v. State*, 439 S.W.3d 764, 769 (Mo. banc 2014). Moreover, the failure to include a claim in a Rule 29.15 motion is not remedied by either the presentation of evidence at a hearing or the refinement of a claim on appeal. *Id.*

Here, the amended motion alleged that trial counsel failed to adequately investigate Roldan-Marron's mental health at the time he committed his offenses in an effort to determine whether he suffered from a diminished capacity to deliberate, an essential element of the offense of murder in the first degree. The amended motion alleges that it was determined after Roldan-Marron was arrested that he suffered from "untreated bipolar disorder," and that the condition improved with treatment during pre-trial detention. The amended motion alleged that trial counsel should have retained a forensic psychologist or psychiatrist to investigate this condition and its effect on the ability to deliberate, and that had trial counsel done so, there is a reasonable probability that the jury would have found Roldan-Marron guilty of a lesser offense. The amended motion alleged that instead of retaining a forensic psychologist or psychiatrist, trial counsel retained a "social worker" to investigate Roldan-Marron's mental health, and that this was not an adequate investigation because a "social worker" cannot testify about "brain chemistry at the time the offenses were alleged to have occurred," could not discuss "changes in Roldan-Marron's brain once he began taking medication" for bipolar disorder, and "could not testify as to the relationship manic and/or depressive breaks have with major life events."

9

The evidence presented by Roldan-Marron at the evidentiary hearing did not align with the claim made in the amended motion. Dr. C.R. testified that Roldan-Marron suffered from an adjustment disorder with mixed anxiety and depression at the time of the crimes, and that although this condition could have affected Roldan-Marron's ability to deliberate, Dr. C.R. could not say with certainty that the condition precluded Roldan-Marron from being able to deliberate. Dr. C.R.'s report also explained that, because Roldan-Marron was experiencing alcohol intoxication at the time of the crimes and suffered memory loss as a result, "a more certain opinion cannot be provided." The claim presented during the hearing on Roldan-Marron's amended motion involved an entirely different mental condition than that asserted to have been discovered and treated after Roldan-Marron's arrest, and the evidence did not in any event support an assertion that Roldan-Marron was unable to deliberate.

Roldan-Marron asserts that the State's waiver argument is "hyper-technical and should be disregarded" because "the identity of the specific mental disease or defect was not key to the claim [of ineffective assistance of counsel] since either [bipolar disorder or adjustment disorder with mixed anxiety and depression] could have supported a diminished capacity defense." [Reply Brief, p. 4]. This dismissive contention is not supported by any evidence, and disregards *State v. Harris*, 870 S.W.2d 798, 815 (Mo. banc 1994), where our Supreme Court considered whether a Rule 29.15 motion that alleged that trial counsel was ineffective for failing to "establish through the testimony of a qualified mental health professional that [the movant] acted under the influence of a mental disease or defect" was specific enough to set forth a claim for relief. Recognizing

10

that Missouri is a fact pleading state and that Rule 29.15 is governed by the Missouri Rules of Civil Procedure, the Court concluded that a Rule 29.15 motion that broadly states the movant suffered from "a mental disease or defect" is not adequately specific, and that later identifying a "specific psychological impairment" (post-traumatic stress syndrome in that case) does not remedy the pleading defect. *Id.*

This case is not materially distinguishable from *Harris.* Though Roldan-Marron's amended motion did identify a specific psychological impairment as required by *Harris*, and thus was specific enough to set forth a claim for relief, the specific psychological impairment Roldan-Marron relied on at the hearing on his amended motion and on appeal is not the specific psychological impairment set forth in the amended motion. We agree with the State that the claim tried to the motion court and presented on appeal is not the same as the claim asserted in the amended motion. As such, Roldan-Marron's claim on appeal is waived as it was not presented in the amended motion. Rule 29.15(d).

We acknowledge that despite its holding in *Harris*, the Supreme Court in *Harris* afforded the waived claim of ineffective assistance of counsel *ex gratia* plain error review on appeal. 870 S.W.2d at 815. However, we will not afford Roldan-Marron *ex gratia* plain error review of his unpreserved claim on appeal. Subsequent to *Harris*, the Supreme Court has consistently concluded that unpreserved claims are not permitted plain error review in post-conviction proceedings. *McLaughlin v. State*, 378 S.W.3d 328, 340 (Mo. banc 2012) (holding in Rule 29.15 appeal that "there is no plain error review in appeals from post-conviction judgments for claims that were not presented in the post-conviction motion") (citing *Hoskins v. State*, 329 S.W.3d 695, 696-97 (Mo. banc 2010)).

11

Moreover, even if we credited Roldan-Marron's contention that the claim tried during the evidentiary hearing and now raised on appeal is sufficiently similar to the claim raised in the amended motion to consider the claim preserved, it is facially evident that Roldan-Marron's claim is without merit. Roldan-Marron's expert, Dr. C.R., could not opine with medical certainty that the psychological condition he diagnosed resulted in Roldan-Marron being unable to deliberate, particularly in light on Roldan-Marron's intoxicated condition and resulting memory loss at the time he murdered Y.G. Dr. C.R.'s report and testimony lend credence to trial counsel's testimony that Roldan-Marron's voluntary intoxication led her to strategically conclude, following an investigation, that it would be best to pursue a "sudden passion" strategy at trial in an effort to diffuse the contention that Roldan-Marron deliberated before killing Y.G. There is a strong presumption that trial counsel's conduct was reasonable and effective. *Davis v. State*, 486 S.W.3d 898, 906 (Mo. banc 2016). The motion court's conclusion that "there was no evidence that trial counsel failed to investigate the case" because based on her investigation of the case, L.O. developed a "strategic trial strategy" to argue that Roldan-Marron acted out of sudden passion, is not clearly erroneous.

## Conclusion

The Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur

12